**KINGSDOWN MEDICAL CONSUL-TANTS, LTD. and E.R. Squibb & Sons, Inc., Plaintiffs–Appellants,**

v.

**HOLLISTER INCORPORATED, Defendant–Appellee.**

**Appeal No. 88–1265.**

United States Court of Appeals, Federal Circuit.

Dec. 21, 1988.

---

Garland P. Andrews, Richards, Harris, Medlock & Andrews, Dallas, Tex., argued for plaintiffs-appellants. With him on the brief were David L. Hitchcock and Eugenia S. Hansen.

James T. Fitzgibbon, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., argued for defendant-appellee. With him on the brief was Angelo J. Bufalino. Also on the brief were Richard T. Zwirner and Judith L. Borden, Schuyler, Roche & Zwirner, Chicago, Ill.

Before MARKEY, Chief Judge,
SMITH and ARCHER, Circuit Judges.

MARKEY, Chief Judge.

Kingsdown Medical Consultants, Ltd. and E.R. Squibb & Sons, Inc., (Kingsdown) appeal from a judgment of the United States District Court for the Northern District of Illinois, No. 84 C 6113, holding U.S. Patent No. 4,460,363 ('363) unenforceable because of inequitable conduct before the United States Patent and Trademark Office (PTO). We reverse and remand.

## BACKGROUND

Kingsdown sued Hollister Incorporated (Hollister) for infringement of claims 2, 4, 5, 9, 10, 12, 13, 14, 16, 17, 18, 27, 28, and 29 of Kingsdown's '363 patent.[1] The district court held the patent unenforceable because of Kingsdown's conduct in respect of claim 9 and reached no other issue.

The invention claimed in the '363 patent is a two-piece ostomy appliance for use by patients with openings in their abdominal walls for release of waste.

The two pieces of the appliance are a pad and a detachable pouch. The pad is secured to the patient's body encircling the abdominal wall opening. Matching coupling rings are attached to the pad and to the pouch. When engaged, the rings provide a water tight seal. Disengaging the rings allows for removal of the pouch.

### A. The Prosecution History

Kingsdown filed its original patent application in February 1978. The '363 patent issued July 17, 1984. The intervening period of more than six-and-a-half years saw a complex prosecution, involving the submission, rejection, amendment, re-numbering, etc., of 118 claims, a continuation application, an appeal, a petition to make special, and citation and discussion of 44 references.

After a series of office actions and amendments, Kingsdown submitted claim 50. With our emphasis on the language of interest here, claim 50 read:

> A coupling for an ostomy appliance comprising a pad or dressing having a generally circular aperture for passage of the stoma, said *pad or dressing aperture encircled by a coupling member* and an ostomy bag also having a generally circular aperture for passage of the stoma, said *bag aperture encircled by a second coupling member,* one of said coupling members being two opposed walls of closed looped annular channel form and the other coupling member of closed loop form having a rib or

---

1. Claims 1, 9 and 27 are independent. Claims 2, 4, and 5 depend from claim 1. Claims 10, 12–14, and 16–18 depend from claim 9. Claims 28 and 29 depend from claim 27.

projection dimensioned to be gripped between the mutaully (sic) opposed channel walls when said coupling members are connected, said rib or projection having a thin resilient deflectible seal strip extending therefrom, which, when said rib or projection is disposed between said walls, springs away therefrom to sealingly engage one of said walls, and in which each coupling member is formed of resilient synthetic plastics material.

The examiner found that claim 50 contained allowable subject matter, but rejected the claim for indefiniteness under 35 U.S.C. § 112, second paragraph, objecting to "encircled", because the coupling ring could not, in the examiner's view, "encircle" the aperture in the pad, the ring and aperture not being "coplanar." The examiner had not in earlier actions objected to "encircled" to describe similar relationships in other claims. Nor had the examiner found the identical "encircled" language indefinite in original claims 1 and 6 which were combined to form claim 50.

To render claim 50 definite, and thereby overcome the § 112 rejection, Kingsdown amended the claim. With our emphasis on the changed language, amended claim 50 read:

A coupling for an ostomy appliance comprising a pad or dressing having *a body contacting surface and an outer surface with* a generally circular aperture for passage of the stoma *extending through* said pad or dressing, a coupling member *extending outwardly from said outer pad or dressing surface and encircling the intersection of said aperture and said outer pad or dressing surface,* and an ostomy bag also having a generally circular aperture *in one bag wall* for passage of the stoma *with* a second coupling member *affixed to said bag wall around the periphery of said bag wall aperture and extending outwardly from said bag wall,* one of said coupling members being two opposed walls of closed looped *annular* channel form and the other coupling member of

closed loop form having a rib or projection dimensioned to be gripped between the mutually opposed channel walls when said coupling members are connected, said rib or projection having a thin resilient deflectible seal strip extending therefrom, which, when said rib or projection is disposed between said walls, springs away therefrom to sealingly engage one of said walls, and in which each coupling member is formed of resilient synthetic plastic material.

To avoid the § 112 rejection, Kingsdown had thus added the pad's two surfaces, replaced "aperture encircled", first occurrence, with "encircling the intersection of said aperture and said outer pad or dressing surface", and deleted "encircled", second occurrence. In an advisory action, the examiner said the changes in claim language overcame the § 112 rejection and that amended claim 50 would be allowable.

While Kingsdown's appeal of other rejected claims was pending, Kingsdown's patent attorney saw a two-piece ostomy appliance manufactured by Hollister. Kingsdown engaged an outside counsel to file a continuation application and withdrew the appeal.

Thirty-four claims were filed with the continuation application, including new and never-before-examined claims and 22 claims indicated as corresponding to claims allowed in the parent application. In prosecuting the continuation, a total of 44 references, including 14 new references, were cited and 29 claims were substituted for the 34 earlier filed, making a total of 63 claims presented. Kingsdown submitted a two-column list, one column containing the claim numbers of 22 previously allowed claims, the other column containing the claim numbers of the 21 claims in the continuation application that corresponded to those previously allowed claims.[2] That list indicated, incorrectly, that claim 43 in the continuation application corresponded to allowed claim 50 in the parent application.

2. Two previously allowed claims were combined in the continuation. In Kingsdown's petition to make special, its attorney, as is required, expressed a belief that all 28 claims then pending were allowable. That petition was approved.

Claim 43 actually corresponded to the un-amended claim 50 that had been rejected for indefiniteness under § 112. Claim 43 was renumbered as the present claim 9 in the '363 patent.

There was another claim 43. It was in the parent application and was combined with claim 55 of the parent application to form claim 61 in the continuation. Claim 55 contained the language of amended claim 50 relating to "encircled." It was allowed as submitted and was not involved in any discussion of indefiniteness. Claim 61 became claim 27 of the patent. Claim 27 reads as follows:

An ostomy appliance comprising a pad or dressing having a body contacting surface and an outer surface with an aperture for passage of the stoma extending through said pad or dressing, *a coupling member extending outwardly from said pad or dressing and encircling the intersection of said aperture and the outer surface of said pad or dressing* and an ostomy bag also having an aperture in one bag wall for passage of the stoma with a second coupling member affixed to said bag wall around the periphery of said bag wall aperture and extending outwardly from said bag wall, said bag coupling member being two opposed walls of closed loop channel form and said pad or dressing coupling member being a closed loop form having a rib or projection dimensioned to be gripped between the opposed channel walls when said coupling members are connected, and a thin resilient seal strip extending at an angle radially inward from an inner surface of said rib or projection which engages the outer surface of said inner channel wall and wherein said rib or projection has a peripheral bead extending therefrom in a direction opposite said deflectible seal strip and said outer channel wall has a complementary bead on its inner surface, each of said two beads having an annular surface inclined to the common axis of said coupling members when connected, the arrangement being such that said two annular surfaces are in face-to-face contact when said two members are in their mutually coupled positions. (emphasis provided)

### B. The District Court

The district court rendered its opinion and announced its decision orally from the bench.

Having examined the prosecution history, the district court found that the examiner could have relied on the representation that claim 43 corresponded to allowable claim 50 and rejected Kingsdown's suggestion that the examiner must have made an independent examination of claim 43, because: (1) in the Notice of Allowance, the examiner said the claims were allowed "in view of applicant's communication of 2 July 83";[3] (2) there was no evidence that the examiner had compared the language of amended claim 50 with that of claim 43; and (3) the examiner could justifiably rely on the representation because of an applicant's duty of candor.

The district court found the materiality element of inequitable conduct, because allowability of claim 50 turned on the amendment overcoming the § 112 rejection in the parent application. Kingsdown's knowledge of materiality was inferred from claim 50's having been deemed allowable in the parent application only after the change in claim language.

The court found the deceitful intent element of inequitable conduct, because Kingsdown was grossly negligent in not noticing the error, or, in the alternative, because Kingsdown's acts indicated an intent to deceive the PTO.

The court found that Kingsdown's patent attorney was grossly negligent in not catching the misrepresentation because a mere ministerial review of the language of amended claim 50 in the parent application and of claim 43 in the continuing application would have uncovered the error, and because Kingsdown's patent attorney had

---

3. As the district court stated, and all agreed, the correct date was 2 July 1982. The only "communication" filed on that date was the continuation application accompanied by an extensive preliminary amendment which included the two columns of claim numbers.

had several opportunities to make that review.

The district court stated that the narrower language of amended claim 50 gave Hollister a possible defense, *i.e.*, that Hollister's coupling member does not encircle the intersection of the aperture and the pad surface because it has an intervening "floating flange" member. The court inferred motive to deceive the PTO because Kingsdown's patent attorney viewed the Hollister appliance after he had amended claim 50 and before the continuation application was filed. The court expressly declined to make any finding on whether the accused device would or would not infringe any claims, but stated that Kingsdown's patent attorney must have perceived that Hollister would have a defense against infringement of the amended version of claim 50 that it would not have against the unamended version.

The district court rejected Kingsdown's argument that unamended claim 50, which became claim 43 and then claim 9 of the '363 patent, satisfied the requirements of § 112 but did not expressly or unequivocally decide that question.[4]

## ISSUE

Whether the district court's finding of intent to deceive was clearly erroneous, rendering its determination that inequitable conduct occurred an abuse of discretion.[5]

## OPINION

We confront a case of first impression, in which inequitable conduct has been held to

reside in an incorrect inclusion in a continuation application of a claim that contained allowable subject matter, but had been rejected as indefinite in the parent application.

■ Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). The findings on materiality and intent are subject to the clearly erroneous standard of Rule 52(a) Fed.R.Civ.P. and are not to be disturbed unless this court has a definite and firm conviction that a mistake has been committed. *J.P. Stevens*, 747 F.2d at 1562, 223 USPQ at 1094.

"To be guilty of inequitable conduct, one must have intended to act inequitably." *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed. Cir.1987). Kingsdown's attorney testified that he was not aware of the error until Hollister mentioned it in March 1987, and the experts for both parties testified that they saw no evidence of deceptive intent. As above indicated, the district court's finding of Kingsdown's intent to mislead is based on the alternative grounds of: (a) gross negligence; and (b) acts indicating an intent to deceive. Neither ground, however, supports a finding of intent in this case.

---

**4.** That the '363 patent issued, with its claim 9 and its presumption of validity, is a fact. The district court's disposition of the § 112 question, which is solely one of validity, was equivocal. The court said it held that the examiner's rejection of claim 9 under § 112 was correct, but also said it "did not reach the issue of invalidity." The district court is not, of course, bound by either the examiner's rejection in the parent application or the examiner's allowance in the continuation application. This court will not answer in the first instance the question of whether claim 9 is actually invalid for indefiniteness under § 112. Doubtless the question will be fully considered and answered by the district court on remand, applying the guidance in *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,

802 F.2d 1367, 1385, 231 USPQ 81, 94–95 (Fed. Cir.1986), *cert. denied* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987), (claim is distinct if those of ordinary skill in the art understand its meaning) in light of all the evidence, including that cited to us by Kingsdown as reflecting Hollister's lack of difficulty with the "encircled" language during 3 years of discovery.

**5.** Because of our decision on intent, it is unnecessary to discuss materiality. *Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1094, 2 USPQ2d 1490, 1495 (Fed.Cir.1987); *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415–16, 5 USPQ2d 1112, 1115 (Fed.Cir.1987).

### a. Negligence

The district court inferred intent based on what it perceived to be Kingsdown's gross negligence. Whether the intent element of inequitable conduct is present cannot always be inferred from a pattern of conduct that may be described as gross negligence. That conduct must be sufficient to require a finding of deceitful intent in the light of all the circumstances. We are not convinced that deceitful intent was present in Kingsdown's negligent filing of its continuation application or, in fact, that its conduct even rises to a level that would warrant the description "gross negligence."

It is well to be reminded of what actually occurred in this case—a ministerial act involving two claims, which, because both claims contained allowable subject matter, did not result in the patenting of anything anticipated or rendered obvious by anything in the prior art and thus took nothing from the public domain. In preparing and filing the continuation application, a newly-hired counsel for Kingsdown had two versions of "claim 50" in the parent application, an unamended rejected version and an amended allowed version. As is common, counsel renumbered and transferred into the continuation all (here, 22) claims "previously allowed". In filing its claim 43, it copied the "wrong", *i.e.*, the rejected, version of claim 50. That error led to the incorrect listing of claim 43 as corresponding to allowed claim 50 and to incorporation of claim 43 as claim 9 in the patent.[6] In approving the continuation for filing, Kingsdown's regular attorney did not, as the district court said, "catch" the mistake.

In view of the relative ease with which others also overlooked the differences in the claims, Kingsdown's failure to notice that claim 43 did not correspond to the amended and allowed version of claim 50 is insufficient to warrant a finding of an intent to deceive the PTO. Undisputed facts indicating that relative ease are: (1) the similarity in language of the two claims; (2) the use of the same claim number, 50, for the amended and unamended claims; (3) the multiplicity of claims involved in the prosecution of both applications; (4) the examiner's failure to reject claims using "encircled" in the parent application's first and second office actions, making its presence in claim 43 something less than a glaring error; (5) the two-year interval between the rejection/amendment of claim 50 and the filing of the continuation;[7] (6) failure of the examiner to reject claim 43 under § 112 or to notice the differences between claim 43 and amended claim 50 during what must be presumed, absent contrary evidence, to have been an examination of the continuation; and (7) the failure of Hollister to notice the lack of correspondence between claim 43 and the amended version of claim 50 during three years of discovery and until after it had carefully and critically reviewed the file history 10 to 15 times with an eye toward litigation. That Kingsdown did not notice its mistake during more than one opportunity of doing so, does not in this case, and in view of Hollister's frequent and focused opportunities, establish that Kingsdown intended to deceive the PTO.

We do not, of course, condone inattention to the duty of care owed by one preparing and filing a continuation application. Kingsdown's counsel may have been careless, but it was clearly erroneous to base a finding of intent to deceive on that fact alone.

Hollister argues that the district court correctly determined that the examiner failed to examine the claims in the continuation application. What the district court "determined" was that there was no *evidence* that examination occurred. No finding on whether examination occurred was made by the district court, and, of course, none may be made by us. In view, how-

---

6. In filing claim 58 in the continuation, Kingsdown also erroneously copied unamended and rejected claim 51 in place of amended and allowed claim 51. The erroneously copied claim 51 became claim 24 of the patent.

7. There was no evidence that counsel's awareness of the rejection/amendment coincided in time with the filing of the continuation application.

ever, of certain uncontested facts: (1) the absence of direct evidence that examination did not occur; (2) the presumption of correctness that attaches to administrative action; (3) Manual of Patent Examining Procedure, section 201.07 (requiring further examination of continuation applications); (4) 35 U.S.C. § 131 (requiring examination of each application); (5) the examiner's search notes; (6) the examiner's initialing of the prior art statement; (7) the presence of seven never-before-examined claims; (8) the examiner's "see parent" notation; and (9) the submission of numerous old and newly-cited prior art references requiring comparison with all the claims, we decline to presume, as part of the intent analysis in this case, a failure of the examiner to perform his duty to examine the claims of Kingsdown's continuation application.[8]

Thus the first basis for the district court's finding of deceitful intent (what it viewed as "gross negligence") cannot stand.

### b. Acts

■ The district court also based its finding of deceitful intent on the separate and alternative inferences it drew from Kingsdown's acts in viewing the Hollister device, in desiring to obtain a patent that would "cover" that device, and in failing to disclaim or reissue after Hollister charged it with inequitable conduct. The district court limited its analysis here to claim 9 and amended claim 50.

■ It should be made clear at the outset of the present discussion that there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235, 224 USPQ 418, 424 (Fed.Cir.1985).

■ The district court appears to have dealt with claim 9 in isolation because of Hollister's correct statement that when inequitable conduct occurs in relation to one claim the entire patent is unenforceable. *J.P. Stevens*, 747 F.2d at 1561, 223 USPQ at 1093. But Hollister leapfrogs from that correct proposition to one that is incorrect, *i.e.*, that courts may not look outside the involved claim in determining, in the first place, whether inequitable conduct did in fact occur at all. Claims are not born, and do not live, in isolation. Each is related to other claims, to the specification and drawings, to the prior art, to an attorney's remarks, to co-pending and continuing applications, and often, as here, to earlier or later versions of itself in light of amendments made to it.[9] The district court ac-

8. The record indicates that different supervisory examiners were responsible for the parent and continuation applications. Neither the district court nor Hollister appear to have noted, in the notice of allowance, the examiner's checking of box 5, indicating that he had applied the prior art including that newly cited, and his checking box 10, acknowledging the claim for priority filed in the patent application. Though it is clearly possible that the examiner examined claims 43 and 50 and had a different view on indefiniteness, and though examiners are authorized but not required to give reasons for allowance, we do not suggest that that occurred. Nor do we suggest that the presumed·compliance of the examiner with his duty to examine the claims in a continuation would relieve an applicant of its duty to avoid mistakes in describing a submitted claim as corresponding to an allowed

version of an earlier claim in the parent application. The district court correctly noted that an examiner has a right to expect candor from counsel. Its indication that examiners "must" rely on counsel's candor would be applicable, however, only when the examiner does not have the involved documents or information before him, as the examiner did here. Blind reliance on presumed candor would render examination unnecessary, and nothing in the statute or Manual of Patent Examining Procedure would justify reliance on counsel's candor as a substitute for an examiner's duty to examine the claims.

9. The district court alluded to the absence from claim 9 of a specific recitation of a "connecting point" between the coupling and the pad. It is clear from the specification that those elements are connected. Whether claim 9 is invalid un-

cepted Hollister's argument that Kingsdown included claim 43 (unamended claim 50) in its continuing application because its chances of proving infringement of claim 43 were greater than would have been its chances of proving infringement of amended claim 50, in view of Hollister's "floating flange" argument against infringement of the latter. Neither the court nor Hollister tells us how Kingsdown could have known in July 1982 what Hollister's defense would be years later, when suit was filed.

Faced with Hollister's assertion that an experienced patent attorney would knowingly and intentionally transfer into a continuing application a claim earlier rejected for indefiniteness,[10] without rearguing that the claim was not indefinite, the district court stated that "how an experienced patent attorney could allow such conduct to take place" gave it "the greatest difficulty." A knowing failure to disclose and knowingly false statements are always difficult to understand. However, a transfer of numerous claims *en masse* from a parent to a continuing application, as the district court stated, is a ministerial act. As such, it is more vulnerable to errors which by definition result from inattention, and is less likely to result from the scienter involved in the more egregious acts of omission and commission that have been seen as reflecting the deceitful intent element of inequitable conduct in our cases.[11]

More importantly, however, the district court's focus on claim 9 caused it to disregard the effect of other claims. In addition to claim 9 and its dependent claims, Kingsdown claimed infringement of claims 2, 4, 5, and 27. The first three of those claims were each broader in some respects than claim 9. The first portion of claim 27, *supra*, corresponded precisely with the amended language of claim 50 on which the district court focused.[12] Claim 27 was allowed, when presented and without amendment, as claim 55 in the parent application. The district court expressly stated that it "did not decide the issue of infringement." Because there has been no decision on whether any of claims 2, 4, 5, and 27 are infringed by Hollister's product, or on whether Kingsdown could have reasonably believed they are, it cannot at this stage be said that Kingsdown *needed* claim 9 to properly bring suit for infringement.[13] If it did not, the district court's implication of sinister motivation and the court's inference of deceptive intent from Kingsdown's acts would collapse.[14]

■ The district court, in finding intent, made a passing reference to Kingsdown's continuation of its suit after Hollister charged inequitable conduct. Hollister vigorously argues before us that Kingsdown's continuing its suit while failing to disclaim or reissue is proof of bad faith. A failure to disclaim or reissue in 1987, however, would not establish that Kingsdown acted in bad faith when it filed its continuation application in 1982. Moreover, a suggestion that patentees should abandon their suits, or disclaim or reissue, in response to every charge of inequitable conduct raised by an alleged infringer would be nothing short of ridiculous. The right of patentees to resist such charges must not be chilled to extinction by fear that a failure to disclaim or reissue will be used against them

der § 112, because of the absence of a specific recitation of a connecting point, may or may not be a matter for consideration in determining the issue of validity on remand. It has no bearing on our decision here.

10. Indefiniteness has to do with validity, not infringement. A claim may be infringed, but the infringer would not be liable if the claim is invalid for indefiniteness under § 112.

11. It is not possible to counter the "I didn't know" excuse with a "should have known" accountability approach when faced with a pure error, which by definition is done unintentionally.

12. Claim 27 contains a number of additional limitations, but the language from which the district court thought Kingsdown was attempting to flee is identical.

13. One of Hollister's attorneys rendered an opinion in which the amended language of claim 50 was not seen as freeing Hollister's device of infringement.

14. That would remain true even if the district court were ultimately to determine that claim 9 is actually indefinite.

as evidence that their original intent was deceitful. Nor is there in the record any basis for expecting that any such disclaimer or reissue would cause Hollister to drop its inequitable conduct defense or refrain from reliance on such remedial action as support for that defense. Kingsdown's belief in its innocence meant that a court test of the inequitable conduct charge was inevitable and appropriate. A requirement for disclaimer or reissue to avoid adverse inferences would merely encourage the present proliferation of inequitable conduct charges.[15]

We are forced to the definite and firm conviction that a mistake has been committed, amounting to an abuse of discretion. The district court's finding of deceitful intent was clearly erroneous.

## RESOLUTION OF CONFLICTING PRECEDENT [16]

### "Gross Negligence" and The Intent Element of Inequitable Conduct

■ Some of our opinions have suggested that a finding of gross negligence compels a finding of an intent to deceive. *In re Jerabek*, 789 F.2d 886, 891, 229 USPQ 530, 533 (Fed.Cir.1986); *Driscoll v. Cebalo*, 731 F.2d 878, 885, 221 USPQ 745, 751 (Fed. Cir.1984). Others have indicated that gross negligence alone does not mandate a finding of intent to deceive. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n. 9, 5 USPQ2d 1112, 1116 n. 9 (Fed.Cir.1987).

■ "Gross negligence" has been used as a label for various patterns of conduct. It is definable, however, only in terms of a particular act or acts viewed in light of all the circumstances. We adopt the view that a finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all

the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive. *See Norton v. Curtiss*, 433 F.2d 779, 167 USPQ 532 (CCPA 1970).

### Nature of Question

■ Some of our opinions have indicated that whether inequitable conduct occurred is a question of law. *In re Jerabek*, 789 F.2d at 890, 229 USPQ at 532–33 (Fed. Cir.1986). In *Gardco Mfg. Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212, 2 USPQ2d 2015, 2018 (Fed.Cir.1987) (citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)), the court indicated that the inequitable conduct question is equitable in nature. We adopt the latter view, i.e., that the ultimate question of whether inequitable conduct occurred is equitable in nature.

### Standard of Review

■ As an equitable issue, inequitable conduct is committed to the discretion of the trial court and is reviewed by this court under an abuse of discretion standard. We, accordingly, will not simply substitute our judgment for that of the trial court in relation to inequitable conduct. "To overturn a discretionary ruling of a district court, the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court." *PPG Indus. v. Celanese Polymer Specialities Co.*, 840 F.2d 1565, 1572, 6 USPQ2d 1010, 1016 (Fed. Cir.1988) (Bissell, J., additional views) (discussing *Seattle Box Co. v. Industrial Crating & Packing Inc.*, 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir.1985); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1542, 3 USPQ2d 1412, 1415 (Fed.

---

**15.** "(T)he habit of charging inequitable conduct in almost every major patent case has become an absolute plague". *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422, 7 USPQ2d 1158, 1161 (Fed.Cir.1988).

**16.** Because precedent may not be changed by a panel, *South Corp. v. United States*, 690 F.2d

1368, 1370 n. 2 (Fed.Cir.1982) (in banc), this section has been considered and decided by an *in banc* court formed of MARKEY, Chief Judge, RICH, SMITH, NIES, NEWMAN, BISSELL, ARCHER, MAYER, and MICHEL, Circuit Judges.

Cir.1987); *Heat & Control Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986)).

### *Effect of Inequitable Conduct*

■ When a court has finally determined that inequitable conduct occurred in relation to one or more claims during prosecution of the patent application, the entire patent is rendered unenforceable. We, *in banc,* reaffirm that rule as set forth in *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1561, 223 USPQ 1089, 1093–94 (Fed. Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

### CONCLUSION

Having determined that the district court's finding of intent is clearly erroneous, the panel reverses the judgment based on a conclusion of inequitable conduct before the PTO and remands the case for such further proceedings as the district court may deem appropriate.

REVERSED AND REMANDED.