923 F.2d 869
 17 U.S.P.Q.2d 1729
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ELDON INDUSTRIES, INC., Plaintiff-Appellee,
v.
VANIER MFG., INC., Defendant-Appellant.
 No. 90-1117.
 United States Court of Appeals, Federal Circuit.
 Nov. 8, 1990.
 
 Before MARKEY, MAYER and LOURIE, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Vanier Mfg., Inc., appeals the judgment of the United States District Court for the Central District of California, Civil Action No. 86-7521 RSWL (JRX) (C.D.Cal. Nov. 6, 1989), concerning United States Design Patent D 271,741 ('741) and United States Patent 4, 431,903 ('903) owned by Eldon Industries, Inc. The court held that both patents were infringed by Vanier and had not been proved invalid, that inequitable conduct had not been shown, that infringement was willful, and that this was an "exceptional case" in terms of 35 U.S.C. Sec. 285.
 
 
 2
 We reverse that part of the judgment finding infringement of the '903 patent and determining that the '741 design patent is not invalid. We affirm that part of the judgment relating to inequitable conduct. We vacate all other rulings of the district court not necessary to the resolution of these issues.
 
 DISCUSSION
 A. Validity
 
 3
 The '741 design patent claims a soldering iron tip having a flat rear surface capable of mating with the flat portion of the heating element of a soldering iron. The district court held that the patent was not invalid. In particular, it found that the soldering iron tip was not "primarily functional" because other configurations could have been used in place of the flat surface, semi-circular rear stock, and collar design of the claimed tip. We disagree.
 
 
 4
 A design patent is invalid if the patented design is "primarily functional," rather than primarily ornamental, or if function dictates the design. Avia Group Intern., Inc. v. L.A. Gear California, 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988). The inventor, Ricco, testified at length, both at trial and at his deposition, that each aspect of his design--the working end points, the cylindrical shoulder, the flat shank, and the chamfer at the end of the shank--resulted from functional considerations. Although Ricco also testified that other configurations for the tip design were possible, we think it is clear that this design had solely functional significance.
 
 
 5
 In order to efficiently transfer heat, the tip must have a flat portion toward the rear of the tip to match the heating surface in the iron. Also, the otherwise semicircular shape of the rear of the tip is a characteristic of the process of manufacturing the tips from rod stock. Indeed, there was no finding or evidence that showed that other rear-end configurations of the tip were possible without adversely affecting the heat transfer characteristics or manufacturing costs of the soldering iron. Moreover, there was no evidence that any aspect of the tip was chosen for its ornamental effect.
 
 
 6
 After viewing the evidence and considering the invention as a whole, and in light of the above, we conclude that the function of the tip dictated its design. The tip is "primarily functional" and any ornamental aspect of the tip is merely a by-product of its function. We therefore reverse the court's judgment holding that the '741 design patent is not invalid.
 
 
 7
 In view of our conclusion, we need not address Vanier's additional assertions that the design patent is invalid on concealment and obviousness grounds.
 
 B. Infringement
 
 8
 The '903 utility patent claims a soldering iron, with the heating element and the tip having "an elongated flat planar heat[ing] surface." The district court found that Vanier contributorily infringed the claims of Eldon's '903 utility patent because Vanier sold replacement tips to users. The issue of infringement thus turns on whether the use of Vanier's accused replacement tips was "reconstruction" of the patented soldering iron, and thus an infringement of claim 1 in the '903 patent, or whether the use was merely permissible repair. It is uncontested that sale of the Vanier tips otherwise met the requirements of 35 U.S.C. 271(c) for contributory infringement, if these sales were not exempted as being to repair worn-out tips.
 
 
 9
 Since infringement is a question of fact, we review the district court's finding of infringement under the clearly erroneous standard. Moleculon Research Corp. v. Matsushita Electric Corp. of America, 775 F.2d 1107, 1118, 227 USPQ 577, 583 (Fed.Cir.1985). The district court found that "[t]he facts establish that the substitution of Vanier tips for Ungar tips by users was done to increase the variety of working ends of tips [rather] than as a substitute for worn-out tips." It concluded that this purpose established that the use of the Vanier tips was for reconstruction of the patented soldering iron and therefore was (contributory) infringement of the patent. The evidence cited by the court was the testimony of witnesses who testified that they had seen occasions on which a tip was removed prior to being worn out, and a tip of a different configuration inserted.
 
 
 10
 One of these witnesses was Mark Ford, Eldon's Western Regional Sales Manager. When asked whether he had seen end users replace Eldon's supplied tip with a Vanier tip, Ford answered "I haven't seen them physically do that but I know people do." Another witness, Robert Stephenson, president of Eldon's Ungar division, also testified that he saw an operator remove an Ungar tip and insert another model to continue soldering. The court did not find that the tip being removed was the tip first supplied by Eldon with the iron, or even that the replacement tip was Vanier's. In fact, Stephenson testified that he never heard of an instance where someone removed the Eldon tip before they used it and installed a Vanier tip of the same end configuration. The testimony of these witnesses who reported occasional substitution before exhaustion of the original tips is insufficient evidence for the court to infer that more than a trivial number of the Vanier tips were used to replace the original Eldon tips before they were worn out, or that the Vanier tips were used to augment the variety of tips used in the Eldon irons. It was Eldon's burden to show direct infringement; it has failed to show that any customer removed the Eldon tips before they were worn out and replaced them with Vanier tips.
 
 
 11
 Moreover, there was evidence that showed that Vanier replacement tips were used to replace worn out Eldon tips. In one instance, the principal of a wholesale distributor of electronic equipment testified that, after having supplied users with Eldon tips, his company supplied the user with Vanier tips because he was unable to get replacement tips from Eldon.
 
 
 12
 This evidence suggests that purchasers of Eldon's iron, having an implied license to use and repair them, purchased Vanier tips primarily to replace worn or spent tips. Such purchase and use constitute permissible repair, not reconstruction. See Everpure Inc. v. Cuno, Inc., 875 F.2d 300, 303, 10 USPQ2d 1855, 1857 (Fed.Cir.1989).
 
 
 13
 Since we find that there is evidence supporting repair and no competent evidence supporting reconstruction, we hold that the district court's view of the evidence was not plausible, see Anderson v. City of Bessemer City, 470 U.S. 564, 577 (1985), and that the court clearly erred in finding that the utility patent was contributorily infringed by sale of the Vanier tips. We therefore reverse the trial court's judgment on this issue. In light of our conclusion on infringement, we vacate the court's judgment that this case was "exceptional." Such an award based on willful infringement cannot stand when there is no infringement.
 
 C. Inequitable Conduct and Attorney Fees
 
 14
 Because we hold that the '741 design patent is invalid, that patent cannot be enforced against Vanier, independently of Vanier's claim that Eldon engaged in inequitable conduct. However, we note that Vanier's claim is that an intent to mislead the PTO was shown in a letter from Eldon's patent solicitor to his client that he was changing the drawings of the utility patent to avoid a double patenting issue. Vanier argues that this letter is "as close to a smoking gun document as one typically finds." Elsewhere in his brief, Vanier argues that Eldon should have known that his patent was unenforceable and therefore that the bringing of the lawsuit was unreasonable, to be penalized by the award of attorney fees.
 
 
 15
 The letter in question was not a "smoking gun," as Vanier claims. It merely showed Eldon's intent to avoid a legal problem rather than to deceive the examiner, as the district court properly found. We do not find that the district court erred in not awarding attorney fees to Vanier, as it is clear that Eldon had a reasonable basis for its suit. In fact, we consider that unjustified assertions of inequitable conduct are just as serious as unjustified patent infringement claims; they should both be discouraged.
 
 
 16
 Vanier also argues that Eldon's action with regard to the prosecution of the '741 design patent tainted the '903 utility patent and that the latter patent should be rendered unenforceable. Since we conclude that there was no inequitable conduct with respect to the '741 patent, we also conclude that the district court did not abuse its discretion in holding that inequitable conduct had not been established as to the '903 patent. See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988), cert. denied, --- U.S. ---, 109 S.Ct. 2068 (1989).
 
 D. Costs
 
 17
 Each side shall bear its own costs.