LINN, Circuit Judge,
concurring.
I join the opinion of the court, because our precedent so requires. I write separately, however, to express my view that this precedent has significantly diverged from the Supreme Court’s treatment of inequitable conduct and perpetuates what was once referred to as a “plague” that our en banc court sought to cure in Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876 n. 15 (Fed.Cir.1988) (en banc) (quoting Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed.Cir.1988) (“[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague.”)).
Symptoms of this plague are apparent from the facts of this case. The patent-insuit has undergone examination twice in the PTO, and the patentee has been accused of inequitable conduct on each occasion for allegedly withholding material information. During original prosecution, the PTO considered 143 references, 135 of which the patentee itself had submitted. *1343 When the patent was later asserted in litigation, the accused infringer responded by alleging inequitable conduct. It also initiated reexamination of the patent, which stayed the litigation. With all parties’ eyes on the reexamination, the paten-tee submitted an additional 210 references with its first information disclosure statement (“IDS”), including a copy of the competitor’s inequitable conduct allegations. The patentee then alerted the PTO to rejections in a co-pending application and submitted two more IDSs in the reexamination, each within approximately one month of the application’s Office Actions. The IDSs contained all references relied on in those rejections but did not include the Office Actions themselves. With full knowledge of the co-pending application, the PTO confirmed the patent, which survived reexamination without substantive change to the litigated claims. When the litigation resumed, the accused infringer again charged the patentee with inequitable conduct, this time based on conduct in the reexamination. This second inequitable conduct allegation was the sole issue at trial. Following remand today, the litigation will continue to focus on inequitable conduct, to the exclusion of the patentee’s infringement contentions.
The ease with which inequitable conduct can be pled, but not dismissed, is a problem of our own making. The Supreme Court’s three inequitable conduct cases involved overt fraud, not equivocal acts of omission. Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 809, 819, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (“patent claims infected with fraud and perjury” where assignee knew that its employee “gave false dates as to the conception, disclosure, drawing, description and reduction to practice” during interference proceeding and then “secured the perjured ... application and exacted promises from the other parties never to question the validity of any patent that might be issued on that application”); Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 243, 54 S.Ct. 146, 78 L.Ed. 293 (1933) (false affidavits and deposition testimonies obtained “for valuable considerations” averring that the prior art use “was an abandoned experiment” and “to keep secret the details of the prior use”); Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 240, 243, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (false trade article procured from “an ostensibly disinterested expert” in exchange for $8,000 to gain patent issuance in spite of previously “insurmountable Patent Office opposition”), overruled on other grounds by Standard Oil Co. v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).
We clarified en banc that the “two elements, materiality and intent, must be proven by clear and convincing evidence,” and that “ ‘gross negligence’ does not of itself justify an inference of intent to deceive.” Kingsdown, 863 F.2d at 872, 876. But in seeming contradiction with Kings-down, a standard even lower than “gross negligence” has propagated through our case law. This standard permits an inference of deceptive intent when “(1) highly material information is withheld; (2) ‘the applicant knew of the information [and] ... knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding.’ ” Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1313-14 (Fed.Cir.2008) (alterations in original) (quoting Ferring B.V. v. Barr Labs., Inc., 437 F.3d 1181, 1191 (Fed.Cir.2006)) (citing Pfizer, Inc. v. Teva Pharms. USA, Inc., 518 F.3d 1353, 1367 (Fed.Cir.2008); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed.Cir.1997)).
This test is problematic. First, the “high materiality” prong of the intent element simply repeats the materiality ele *1344 ment.' Conflating materiality and intent in this manner is inconsistent with the principle that “materiality does not presume intent, which is a separate and essential component of inequitable conduct.” Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 552 (Fed.Cir.1990) (quoting Allen Organ Co. v. Kimball Int’l, Inc., 839 F.2d 1556, 1567 (Fed.Cir.1988)). The second, “should have known” prong sets forth a simple negligence standard, lower even than the “gross negligence” standard that was expressly rejected in Kingsdown.[1] I also question whether a fact-finder who has deemed information to be “highly material” would not also be compelled to conclude that a reasonable patentee “should have known of the materiality,” at least when the patentee “knew of the information,” as prong two requires. Third, the “credible explanation” prong effectively shifts the burden to the patentee to prove a negative: that it did not intend to deceive the PTO. But it is the “accused in-fringer” — not the patentee — who “must prove by clear and convincing evidence that the material information was withheld with the specific intent to deceive the PTO.” Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed.Cir.2008). As to this third prong, we have also explained that “[t]he patentee need not offer any good faith explanation unless the accused infringer first carried his burden to prove a threshold level of intent to deceive by clear and convincing evidence.” Id. at 1368 (emphasis added). As explained above, however, the first two prongs are not evidence of deceptive intent. The first is evidence of materiality; the second is evidence of negligence. These two prongs are therefore insufficient as a matter of law to establish a clear and convincing “threshold level” of deceptive intent before the third prong can ever properly come into play.
As it now stands, the test generally permits an inference of deceptive intent to be drawn whenever the three prongs are satisfied. This is in tension with the rule in Star Scientific that “the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence.” Id. at 1366 (emphasis added). It cannot be said that deceptive intent is the “single most reasonable inference” when all that prong two shows is that the patentee “should have known” that the information was material. An equally reasonable inference under this test is that the patentee incorrectly believed that the information was not material, or that the patentee was negligent, or even grossly negligent. None of these gives rise to deceptive intent under Kingsdown, nor is deceptive intent the “single most reasonable inference” under Star Scientific.
For the foregoing reasons, I respectfully submit that the test for inferring deceptive intent, as it currently exists, falls short of the standard “need[ed] to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context.” Star Scientific, 537 F.3d at 1365. The facts of this case suggest that the time has come for the court to review the issue en banc.

. The source of this divergence can be traced to Critikon, 120 F.3d at 1256 (citing Driscoll v. Cebalo, 731 F.2d 878, 885 (Fed.Cir.1984)). It relied on the pre-Kingsdown “should have known” standard of Driscoll v. Cébalo, a case explicitly overruled by Kingsdown on the issue of gross negligence, 863 F.2d at 876. See Lynn C. Tyler, Kingsdown Fifteen Years Later: What Does It Take to Prove Inequitable Conduct?, 13 Fed. Cir. B.J. 267, 276-83 (2004) (collecting panel decisions that rely on precedent explicitly overruled by Kingsdown).