NEWMAN, Circuit Judge,
dissenting; stay requested.
I. Inequitable Conduct
The district court held the patent in suit unenforceable on the ground of “inequitable conduct.” The panel majority holds, and I agree, that on the evidence that was adduced before the district court, intent to deceive was not established by clear and convincing evidence; however, if deceptive intent was not established at the trial of this issue, by the party with the burden to do so, it is inappropriate for this court to remand for another shot at it.
As for materiality, I do not share the conclusion that the undated AeroMed brochure, obtained at a trade show (the Association of Aeromedical Services) a few weeks after this patent application was filed, and found not to be invalidating prior art, was so clearly and convincingly “material to patentability” that failure to provide a copy of the brochure while quoting its front page, invalidates the patent that was found valid over the entire content of the brochure. The record does not show that the brochure was published before the Golden Hour patent application was filed. The defendants provided no documentary evidence of any publication date, and the district court did not find the brochure to be prior art; their only evidence was the “uh-huh’s” of the brochure’s author, quoted at footnote 1 of the majority opinion.
The record showed that when the brochure came into Golden Hour’s possession at the trade show, it was given to Golden Hour’s patent attorney, who referred to it in the Invention Disclosure Statement filed with the PTO, including quotation of the cover page but not the inner page. At the trial, the full brochure was in evidence, and stressed by the defendants, and the jury found that it was not invalidating. In view of the majority’s ruling that deceptive intent was not established in the district court, and the jury’s verdict of validity despite the brochure, the charge of inequi *1382 table conduct should be laid to rest. At most, this charge was deemed viable only because of inconsistencies in the law, inconsistencies that this court has presented for resolution in the pending en banc case of Therasense, Inc. v. Becton, Dickinson & Co., Nos.2008-1511, -1512, -1513, -1514, - 1595. The court’s Order, reported at 374 Fed.Appx. 35 (Fed.Cir.2010), presents six detailed questions for en banc review, and has received extensive amicus curiae participation. Argument is scheduled for November 9, 2010. It is sufficiently likely that the reasoning applied in this case could be affected, that this appeal should be held pending completion of the en banc proceedings.[1] The Supreme Court has long followed such a procedure, as explained in, e.g., Lawrence v. Chater, 516 U.S. 163, 181, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (“We regularly hold cases that involve the same issue as a case on which certiorari has been granted and plenary review is being conducted in order that (if appropriate) they may be ‘GVR’d’ [grant of certiorari, vacatur, and remand] when the case is decided.”) (Scalia, J., dissenting on other grounds); see generally Eugene Gressman, et al., Supreme Court Practice 345-49 (9th ed.2007) (discussing the Court’s practice whereby related cases are stayed while the Court is elsewhere considering an issue that may affect the related cases). It behooves this court to be equally fair.
The charge of inequitable conduct carries high stakes for both the attorney, whose career it can threaten, and the applicant, who can lose a perfectly valid patent. In Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867 (Fed. Cir.1988), this court, recognizing the abuses that had arisen, held en banc that both materiality and culpable intent had to be established by clear and convincing evidence, that even gross negligence was insufficient to establish inequitable conduct, and that intent could not be inferred from materiality. For the Golden Hour patent, the question of patentability in view of the AeroMed brochure was before the jury, and the jury verdict of validity despite the AeroMed brochure is not challenged. Since intent to deceive was not established before the trial judge, and materiality is reasonably disputed, there is no basis for a second-bite ruling of inequitable conduct. I would lay the matter to rest or, at a minimum, stay the proceedings until conflicting precedent is clarified in accordance with the pending en banc hearing of the Therasense appeal. Thus I must, respectfully, dissent from the court’s treatment of this issue.
II. Joint Infringement
The court rules that when two entities collaborate to infringe a patent, such that one performs some steps of the claim and the other performs the other steps, there cannot be any infringement, on any theory, unless one entity “controls or directs” the activity of the other. As the majority opinion reports, here the defendants “formed a strategic partnership, enabled their two programs to work together, and collaborated to sell the two programs as a unit.” Maj. Op. at 1371. The court now holds that such a relationship avoids all *1383 liability for infringement, even when the defendants collaborate to practice every limitation of the claims. That ruling is incorrect as a matter of law.
The parties focused on the “control or direction” criterion as negating joint infringement, for this court has stated, for example in Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed.Cir.2008), that there cannot be infringement when entities collaborate to practice a patented invention. Such a universal statement is incorrect. A collaborative effort as here, a “strategic partnership” to sell the infringing system as a unit, is not immune from infringement simply because the participating entities have a separate corporate status. The jury found that the defendants emsCharts and Softtech combined their procedures into an integrated system that met all of the limitations of claims 1, 6-8, and 15-22, thus finding joint infringement and inducement to infringe these claims. The panel majority acknowledges that the defendants in collaboration infringed the claims, but without discussion overturns the jury verdict.
The evidence showed that emsCharts and Softtech integrated the functions of their software programs, and sold the ensuing system as a package. The jury was shown an October 2005 press release announcing “[t]his partnership,” and promoting their resultant integrated system in “seamless transition.” The press release states:
This partnership allows emsCharts to combine their existing product line with Softtech’s CAD [Computer Aided Dispatch] technology, enabling them to deliver a complete pre-hospital data solution for Emergency Medical Services.
.... Flight Vector integrates with the emsCharts web-based EMS management application, providing a seamless transition from CAD to medical reports
to billing through a user-friendly web interface.
“emsCharts strives to deliver best-of-breed products to our customers,” said Pete Goutmann, Vice President and founder of emsCharts. “We believe that this strategic partnership with Softtech will provide the air medical industry with a complete flight management solution — delivering the best of charting with the best of dispatch.”
J.A.5030. On this and other evidence, a reasonable jury could have found that this collaborative activity infringed the various claims, as shown in the verdict form. My colleagues err in discarding this verdict on the ground that infringement cannot be found as a matter of law. From this ruling, I must again dissent.

. For example, the panel majority relies on a case that applied the former version of PTO Rule 56 (the "reasonable examiner” subjective standard), while selectively referring to the current version of Rule 56, citing Digital Control, Inc. v. Charles Machine Works, 437 F.3d 1309, 1316 (Fed.Cir.2006) (”[I]f a misstatement or omission is material under the new Rule 56 standard, it is material [for inequitable conduct]. Similarly, if a misstatement or omission is material under the 'reasonable examiner' standard or under the older three tests, it is also material.”). This discrepancy with the PTO standard is subject to resolution in the pending en banc review.