Dissenting opinion filed by Circuit Judge NEWMAN.
NEWMAN, Circuit Judge, dissenting.
American Calcar, Inc. was founded by Michael Obradovich as a business that creates “Quick Tips” booklets with “everything you want to know about your new car in ten seconds or less.” Am. Calcar, Inc. v. Am. Honda Motor Co., No. 06-cv-2433, 2012 WL 1328640, at *1 (S.D.Cal. April 17, 2012) (“Dist. Ct. Op.”). The Quick Tips booklets are based on information obtained from the manufacturer’s Owner’s Manual and Calcar observation of the vehicle itself.
The only issue is whether Mr. Obradovich committed inequitable conduct by not providing the PTO, when the parent patent application was filed, with the Acura Owner’s Manual and the photographs that the Calcar employees took of the Acura display. These materials were provided to the PTO on reexamination of the '497 patent, and patentability was confirmed by the PTO in light of that additional information.
The factual premises of “inequitable conduct” were not established, for there was not “but-for” materiality and no evidence of intent to deceive. The panel majority distorts the Therasense standards, ignores the PTO reexamination, casts the jury aside, and generally disregards the safeguards that this court adopted en banc. I respectfully dissent, for the criteria of inequitable conduct are plainly not met.
Discussion
The patents at issue are for a computer-implemented system for searching, display and control of vehicle functions, presented in a user-friendly form, as in the Quick Tips booklets. The inventors testified that they observed and photographed the Acura 1996 RL navigation system, planning to produce a Quick Tips booklet, and that this system was a “platform” for the patented system.
*1193 The patents describe the Acura 96RL navigation system as prior art:
Recently, navigation systems based on military global positioning system (GPS) technology have emerged. One such navigation system is commercially available as an option for the latest model of the ACURA 3.5 RL automobile. This ACURA navigation system receives signals from a constellation of satellites which is part of the GPS. In response to these signals, the navigation system pinpoints the automobile’s location (in latitude and longitude). It also detects the automobile’s speed and direction. With geographic information stored on a hard disk in an onboard computer, the navigation system is capable of verbally and visually communicating to the user instructions for reaching the destination.
355 patent, col.l 11.51-63; 497 patent, col.l 1.57 to col.2 1.2; 465 patent, col.l 1.58 to col.2 1.3; '795 patent, eol.l 1.61 to col.2 1.6.
The patents state that they are directed to an improved system that provides quick access to and display of information about multiple vehicle functions. E.g., '497 patent, eol.3 11.23-33. The information may include operational instructions, maintenance procedures, and safety measures. Id. at col.5 11.5-7. The functions that may be controlled include climate control, audio, mirrors, windows, cruise control, lights, and security functions. Id. at col.5 11.45-52. The system may “realize not only AUTO DIRECTOR functions to be described, but also the wellknown navigation function.” Id. at col.5 11.29-31. The patents state the objective of incorporating a centralized control system in a multifunction display interface. Id. at col.6 11.15-33.
Patentability is not at issue in this appeal. Validity and infringement were tried, appealed, and finally decided in earlier phases of this eight-year litigation. In the trial phase, the jury found that there was not inequitable conduct in the failure to initially provide the Owner’s Manual and photographs to the patent examiner. My colleagues do not agree with the jury, although they do not discuss whether there was substantial evidence to support the jury’s findings. On the principles established in Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed.Cir. 2011) (en banc), inequitable conduct did not lie.
Nonetheless, my colleagues rule that the patents are unenforceable based on the initial failure to send the Owner’s Manual and photographs to the PTO. The inequitable conduct with which Mr. Obradovich is charged is that he “did not tell Mr. Yip [his patent attorney] about his experience with the 96RL, nor did he provide Mr. Yip with the Owner’s Manual or the photos of the navigation system display screens.” Disk Ct. Op. at *11. However, the PTO established, on reexamination of the '497 patent, that the purportedly withheld information was not material to patentability. In accordance with Therasense this ended the inequitable conduct inquiry, for the PTO sustained patentability in view of this information.
In addition, there was no evidence of intent to deceive the PTO. The panel majority impugns Mr. Obradovich’s credibility, although they do not say what is disbelieved. The jury heard and saw Mr. Obradovich, on examination and cross-examination, and did not find deceptive intent. My colleagues “infer” clear and convincing evidence of deceptive intent from Mr. Obradovich’s initial failure to send his patent attorney the Owner’s Manual and the photographs of the Acura display. They postulate that a savvy inventor and businessman such as Mr. Obradovich would have known the information was material to patentability and would there *1194 fore withhold it in order to deceive the PTO. However, a more likely inference is that a savvy inventor and businessman would know that a patent obtained through concealment of a material reference is not a reliable commercial asset.
I summarize the majority’s flawed application of the law of inequitable conduct:

Materiality

A “material” reference in the context of inequitable conduct law is a reference that negates patentability: that is, “but-for” the reference the claim would be patentable. The rule of “but-for materiality” is that if the reference would not have prevented the grant of the patent, it cannot render the patent unenforceable. Therasense, 649 F.3d at 1291 (“[Pjrior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.”); In re Rosuvastatin Calcium Patent Litig., 703 F.3d 511, 519 (Fed.Cir. 2012) (“To establish materiality, it must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation.”).
We need not speculate about whether the PTO would have granted the Calcar patents “but-for” the information in the Owner’s Manual and the photographs, for the PTO’s reexamination of the '497 patent provides the answer: the PTO confirmed patentability. Reexamination was conducted in full view of not only the targeted information, but also Honda’s Preliminary Invalidity Contentions. The purpose of reexamination is to provide PTO expertise in determining patentability. This procedure was followed, and established that the challenged information was not “material” to patentability as determined by the PTO. That ruling was not appealed. My colleagues’ contrary holding is not available.
Nonetheless, the panel majority finds that Calcar deliberately withheld the Owner’s Manual and photographs from the PTO. However, it cannot be said that the Acura 96RL system was concealed. The Calcar patents all state that their system’s hardware and control panel are “derived from a prior art navigation system,” citing the Acura system and describing its contribution to a flowchart for the Calcar system:
Display interfaces 102 include, inter alia, AUTO DIRECTOR display interface 102a, which is illustrated in FIG. 2, together with control panel 205 in FIG. 1. By way of example, but not limitation, the hardware of interface 102a and control panel 205 are derived from a prior art navigation system of the type of the ACURA navigation system. In fact, interface 102a and control panel 205 are used in this illustrative embodiment to realize not only AUTO DIRECTOR functions to be described, but also the well-known navigation function.
'355 patent, col.5 11.18-27; '497 patent, col.5 11.22-31; '465 patent, col.5 11.23-32; '795 patent, col.5 11.27-36.
The panel majority dismisses the Calcar patent disclosure, stating that “he [Mr. Obradovich] only disclosed the mere existence of the 96RL, without operational details.” Maj. Op. at 1191. The panel majority finds that there are “undisclosed operational details” in the Acura Owner’s Manual, although we are not told what those details are, or how they constitute “but-for” materiality. In contrast, the PTO, reviewing all of the challenged information, concluded that the omitted information is not material to patentability.
Although validity was previously finally decided and is not before us, the panel majority sua sponte declares the Calcar patents “obvious, and thus unpatentable.” Maj. Op. at 1190. In so doing, the majority discards the statutory requirement of con *1195 sideration of “the invention as a whole,” 35 U.S.C. § 103.
For Calcar’s '465 patent, the panel majority plucks out a single claim term, as follows:
1. A system for use in a vehicle comprising:
a memory for storing a plurality of displays having predetermined contents, the plurality of displays being associated with a plurality of aspects of the vehicle;
an interface for entering a query to conduct a search concerning an aspect of the vehicle;
an input device for selecting a result of the search;
a processor responsive to the selected result for identifying at least one of the plurality of displays which is associated with the aspect of the vehicle; and
a display element for showing thereon the at least one display.
(emphasis in Maj. Op.). This is an incorrect legal analysis. In KSR International Co. v. Teleflex Inc., 550 U.S. 398, 418, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) the Court explained that “a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.” The invention must be considered as a whole; it is improper to select components or elements of a claimed system for isolated analysis. My colleagues take that flawed path.
My colleagues also incorrectly state that Calcar “concedes” that its invention is no more than the single step of a “search concerning an aspect of the vehicle,” see claim 1, supra. Calcar stressed the novelty of its system as a whole, with its plurality of aspects and displays. The panel majority improperly segregates the claim into what it deems to be new and old elements, reducing Calcar’s invention to a single isolated element. The Court reiterated in KSR that it is the entirety of the claimed system that is analyzed, not separate components in isolation. 550 U.S. at 418, 127 S.Ct. 1727. Calcar’s invention is not merely the search for an aspect of the vehicle; it is a computer-implemented system for searching and controlling aspects of the vehicle. This system was not described in the prior art, which includes the Acura 96RL Owner’s Manual.
On the correct law, “but-for materiality” of the Owner’s Manual and photographs was not shown by clear and convincing evidence. This alone negates a ruling of inequitable conduct. See Therasense, 649 F.3d at 1287 (holding that both materiality and intent to deceive must be shown; each must be established by clear and convincing evidence).

Intent to deceive

The panel majority also finds that Mr. Obradovich intended to deceive the PTO, again on reasoning that is unsupported by fact and contrary to law. The majority ignores that the Acura navigation system was identified as prior art in all of the patent specifications, that any omission was remedied with reexamination, and that the jury, viewing the witnesses and hearing the charges and arguments, found that intent to deceive the PTO had not been shown.
My colleagues agree that there was no evidence of intent to deceive. Thus they devise an “inference” of deceptive intent from the initial omission of the Owner’s Manual and the photographs. In Therasense the court stressed the need for rationality and proof, not guess and sentiment; thus the court held that “when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.” 649 F.3d at 1290-91. In Kingsdown Medical Consultants, Ltd. v. *1196 Hollister, Inc., 863 F.2d 867, 873 (Fed.Cir. 1988) the court held that “the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.”
In the absence of any evidence, the panel majority slips into “inference,” citing Mr. Obradovich’s purported lack of credibility. The majority appears to reason that if “credibility” can be challenged in any way, adverse inferences on all aspects can be drawn. The defendants attempted to target Mr. Obradovich’s credibility throughout the trial, for he was a principal witness. The briefs describe two areas in which credibility was attacked. First, there was uncertainty of recollection about who in the Calcar study team took the photographs of Acura’s navigation system in 1996, a dozen years before trial. The district court found that Mr. Obradovich knew of the photos, although his recollection was vague. Second, his recollection was vague regarding the extent to which he “played with” Acura’s navigation system during the test drive in 1996. The Honda briefs state that in 2005 Mr. Obradovich stated by deposition that he “played with” the Acura 96RL navigation system in 1996; at a 2007 deposition he did not remember whether he “operated” the Acura system in 1996; and at trial in 2008 he said that he thought he “played with” it in 1996. Whether or not this is an inconsistency of recollection, it is not clear and convincing evidence of intent to deceive the PTO.
The jury presence is of particular relevance to questions of credibility. Mr. Obradovich was examined and cross-examined as to his role in preparation of the patent applications, and the jury found that inequitable conduct had not been shown. The panel majority states that it can ignore the jury verdict because there was evidence that the jury did not see. Honda tells us it provided the court with over a thousand pages of testimony, but does not identify what might affect this issue. My colleagues’ reliance on unsupported speculation outside of the record as grounds for destroying valuable property rights is not an appropriate adjudicatory process.
The court in Therasense recognized the complexities of the patent application process, where every action taken or not taken is fair game for loose accusation and satellite litigation. The Therasense court sought to temper the litigation game of “inequitable conduct,” by “tighten[ing] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.” 649 F.3d at 1290. To bring stability and uniformity to patent law, it is imperative that the law is consistently and correctly applied. I respectfully dissent.