**MOBIL OIL CORPORATION, Plaintiff,**

v.

**ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC., Defendant.**

**ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC., Counterclaim Plaintiff,**

v.

**MOBIL OIL CORPORATION, Mobil Corporation, Mobil Chemical Company, Inc., Arthur C. Ferguson, and Paul M. Herbst, Counterclaim Defendants.**

Civ. A. No. 92–351–JJF.

United States District Court, D. Delaware.

May 20, 1994.

See also 833 F.Supp. 437.

Charles S. Crompton, Jr., William J. Marsden, Jr. of Potter Anderson & Corroon, Wilmington, DE, Richard E. Kurtz, Albert T. Keyack of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PA, and John B. Williams, Patrick J. Coyne, and Mary E. Madigan of Collier Shannon Rill & Scott, Washington, DC, for Mobil Oil Corp., Mobil Corp., Mobil Chemical Co., Inc., Arthur C. Ferguson, and Paul M. Herbst.

Douglas E. Whitney, R. Judson Scaggs, Jr., Lisa B. Baeurle, Christine M. Hansen, and Maryellen Noreika of Morris Nichols Arsht & Tunnell, Wilmington, DE, for Advanced Environmental Recycling Technologies, Inc.

## MEMORANDUM OPINION

FARNAN, District Judge.

### I. INTRODUCTION

Presently before the Court is Mobil's Motion for Entry of Findings on Inequitable Conduct. AERT and Mobil both manufacture composite wood products from recycled plastic and wood fiber. On June 9, 1992, Mobil sued AERT for a declaratory judgment claiming that four of AERT's composite product patents are invalid, unenforceable and not infringed. AERT counterclaimed, alleging antitrust violations, Lanham Act violations, breach of confidential relationship and patent infringement. The Court bifurcated the patent issues and ordered them to be tried first.

After an approximate two week trial, the jury found that Mobil did not infringe AERT's patents and that all four patents were invalid because they were obvious and anticipated by the prior art. In addition to reaching a verdict on invalidity and infringement, the jury also made advisory findings that the inventors and their attorneys failed to disclose material information and made material misrepresentations to the United States Patent and Trademark Office ("PTO").[1]

### II. DISCUSSION

The jury found two instances of inequitable conduct on the part of AERT. First, the

1. Interrogatory 20 asked the jury "Do you find by clear and convincing evidence that the inventors, their representatives, or their attorneys failed to disclose material information to the United States Patent and Trademark Office?" The jury was further instructed to describe the material information that was withheld, if any. The jury responded affirmatively to this interrogatory and described the material information that was withheld as "Hearthbrite, Rivenite–Juniper Products/Ind."

Interrogatory 21 asked the jury, "Do you find by clear and convincing evidence that the inventors, their representatives, or their attorneys made material misrepresentations to the United States Patent and Trademark Office?" The jury was further instructed to describe the misrepresentation if one was so found. The jury responded affirmatively to Interrogatory 21 and described the misrepresentation as "Specifically denied that Erb patent (using leaves) was foundation of AERT's process."

Interrogatory 22 asked the jury, "If you have answered either of the two above interrogatories 'yes,' do you find by clear and convincing evidence that the inventors, their representatives, or their attorneys either failed to disclose or misrepresented material information with the intent to deceive the United States Patent and Trademark Office?" The jury was further instructed to "describe the undisclosed or misrepresented material information and identify the person or persons having an intent to deceive." The jury responded affirmatively to Interrogatory 22 and described the following undisclosed or misrepresented material information as the basis for its finding of an intent to deceive, "Hearthbrite/Redmar process and Rivenite should have been disclosed as having used similar technology to AERT and all based on Erb patent. Inventors/Attorneys."

jury found that AERT failed to disclose to the PTO material information related to Hearthbrite, Rivenite and Juniper Products. Second, the jury found that AERT made material misrepresentations to the PTO by specifically denying that the Erb patent was the foundation of AERT's process.

### A. Legal Standard

██ Rule 56(a) of Title 37, Chapter 1 of the Code of Federal Regulations provides that applicants and their attorneys must "disclose to the [PTO] information they are aware of which is material to the examination of the application." 37 C.F.R. 1.56(a) (1989). Applicants for patents and attorneys representing applicants owe the PTO a duty of candor, good faith and honesty. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n. 8 (Fed.Cir.1987); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1538 (Fed.Cir.1984); *American Standard Inc. v. Pfizer Inc.*, 722 F.Supp. 86, 141 (D.Del.1989) (citing *Precision Inst. Mfg. Co. v. Automotive M.M. Co.*, 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381 (1945)). This duty requires the applicant or the attorney to disclose all material information of which they were aware. Any knowledge or action taken by the attorney is considered chargeable to the applicant. *FMC Corp.*, 835 F.2d at 1415 n. 8.

██ One who alleges inequitable conduct based on a failure to disclose material prior art must show by clear and convincing evidence:

(a) the existence of material prior art or information;

(b) knowledge chargeable to the applicant of the prior art or information and its materiality; and

(c) failure of the applicant to disclose the art or information resulting from an intent to mislead the U.S. PTO.

*Id.* at 1415. Thus, for the Court to conclude that AERT is accountable for inequitable conduct before the PTO, the Court must first find that certain thresholds of materiality and intent are present. *Under Sea Industries, Inc. v. Dacor Corp.*, 833 F.2d 1551, 1559 (Fed.Cir.1987). Only if threshold levels of materiality and intent are present must the Court, as a matter of law, determine whether inequitable conduct was present. *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1562 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985) (citations omitted).

### 1. Materiality

Information is considered material if "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56(a); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 992 (Fed.Cir.1988).

██ An applicant need not disclose all prior art. *J.P. Stevens & Co.*, 747 F.2d at 1559. The applicant need not disclose prior art which is no more pertinent or merely cumulative to that considered by the examiner. *Rolls–Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1107 (Fed.Cir.1986). Further, if the uncited art is less material than those already disclosed, the applicant and attorney have no obligation to disclose the art in issue. *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1440 (Fed.Cir.1991).

██ Likewise, the applicant is not required to disclose information to the PTO that teaches away from the claimed invention. *See Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 448–449 (Fed.Cir.1986), *cert. denied*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987); *see also Air Prods. & Chems., Inc. v. Chas. S. Tanner Co.*, 219 U.S.P.Q. 223, 243 (D.S.C.1983).

### 2. Intent to Mislead or Deceive

██ Before the Court may render AERT's patents unenforceable due to inequitable conduct, the Court must also find an intent to mislead or deceive the PTO. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). However, because direct evidence of an intent to deceive rarely exists, the Court often must rely on circumstantial evidence leading to an inference of intent to mislead as the basis for a finding of inequitable conduct. *Id.* In ascertaining whether AERT acted with the requisite in-

tent, the Court must view AERT's conduct in light of the totality of the circumstances, "including the nature and level of culpability of the conduct and the absence or presence of affirmative evidence of good faith." *Id.* (citing *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 876 (Fed.Cir. 1988)); *see also Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 809 (Fed.Cir.1990); *RCA Corp. v. Data General Corp.,* 887 F.2d 1056, 1065 (Fed.Cir.1989). Although subjective good faith may prevent the inference of intent, if an undisclosed reference was material and the applicant knew or should have known that the reference was material, a mere denial of bad faith is insufficient. *FMC Corp.,* 835 F.2d at 1416.

▇▇▇ Once the Court finds that material information existed that was not disclosed to the PTO and an intent to mislead or deceive, the Court must balance the degree of materiality against the degree of culpability. In balancing, materiality and intent are inversely related. Thus, "the more material the omission, the less culpable the intent required, and vice versa." *Halliburton Co.,* 925 F.2d at 1439 (citing *N.V. Akzo v. E.I. Dupont de Nemours,* 810 F.2d 1148, 1153 (Fed.Cir.1987)).

### B. Hearthbrite, Rivenite and Juniper Products

▇▇▇ Mobil first asks the Court to enter a judgment of inequitable conduct based on the jury's finding that AERT withheld material information from the PTO regarding Hearthbrite, Rivenite and Juniper Products. AERT argues that information regarding Hearthbrite was not material because: (1) the Hearthbrite process was less pertinent than the prior art disclosed; (2) the Hearthbrite process cumulative to the Erb patent; and (3) the Hearthbrite process was not public and therefore not prior art.

With regard to AERT's third argument against the materiality of Hearthbrite, the Court notes that a reference does not have to be prior art to be material information that must be disclosed to the PTO. *See* 37 C.F.R. § 1.56. In any event, the jury found that Hearthbrite was material prior art with regard to three of the four patents. In view of

the jury's finding, principles of collateral estoppel preclude the Court from now holding that Hearthbrite is not prior art. *Snider v. Consolidation Coal Co.,* 973 F.2d 555, 559 (7th Cir.1992) ("when common issues are simultaneously tried to both a judge and a jury, the jury's findings with respect to those common issues are binding upon the judge"); *cert. denied,* —— U.S. ——, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993); *see also Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 954 (2d Cir.1988) ("when a jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way"); *McKnight v. General Motors Corp.,* 908 F.2d 104, 113 (7th Cir.1990) (rule is premised on principles of collateral estoppel), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).

Moreover, even if AERT were not "estopped" from arguing Hearthbrite's materiality, the Court is free to adopt the jury's advisory findings on materiality and intent. *See Greenwood v. Greenwood,* 234 F.2d 276, 278 (3d Cir.1956) (although a trial court is not bound by a jury's answers to advisory interrogatories, the court may adopt the jury's findings as its own). Notwithstanding AERT's arguments to the contrary, the Court is persuaded that the jury's findings with regard to the materiality of Hearthbrite, Rivenite and Juniper are well-supported by the evidence.

In addition, the Court does not agree with AERT that Hearthbrite was cumulative of the Erb patent. The Erb patent does not disclose the use of wood fibers, and this is not an insignificant distinction. The distinction between using wood fibers and using leaves is one of the bases upon which AERT argued to the Patent Examiner that its process was patentable over Erb. Further, both Boyd Cox and Mr. Brooks appreciated the significance of this distinction. On January 11, 1978, Cox wrote a letter to Mr. Brooks distinguishing the Juniper process from the Erb patent on the basis that Juniper did not use leaves. In addition, while the Erb patent is general and vague, the Hearthbrite process, as described in the deposition testimony of Philip Forgione, was detailed and specific.

The Court further specifically finds that the information regarding the process used at Hearthbrite, Rivenite and Juniper Products was not less pertinent than the Erb patent, the Michigan State University articles, or any combination of these two references. First, AERT's own witness eventually conceded, contrary to his initial testimony, that some elements described in the Hearthbrite process, as disclosed in the Forgione deposition testimony, were not found in the Erb patent, the Michigan State University papers, or any combination of the two. Second, the Hearthbrite process was of particular significance because it was based on the Erb patent, with the significant exception that wood fibers rather than leaves were used. Given AERT's arguments before the PTO, the citation of the Michigan State University articles could not have been more pertinent than a process which utilized the Erb patent disclosures with wood. Thus, in light of all of the evidence presented at trial, the Court agrees with the jury's finding that Hearthbrite was a material, non-cumulative reference that should have been disclosed to the PTO.

The Court also agrees with the jury's finding that AERT intentionally withheld Hearthbrite from the PTO for the purpose of deceiving the PTO into awarding AERT patent protection. First, although Mr. Cox told Mr. Brooks and the inventors to disclose all similar technologies to the PTO, the Hearthbrite process was never disclosed. Support of the proposition that Mr. Brooks viewed Hearthbrite as a similar technology is evidenced by his disclosure to the SEC that Hearthbrite was a similar technology.

Second, Mr. Cox stated that he did not disclose Hearthbrite to the PTO because of his opinion that it was cumulative to the Erb patent. However, Mobil presented evidence that Mr. Cox was not aware that Hearthbrite was practicing the Erb process with wood fibers instead of leaves. According to Mr. Cox, this is a patentable distinction. Furthermore, Mr. Brooks knew that the use of the Erb patent with wood scraps was of patent significance because Mr. Brooks received an infringement opinion from Mr. Cox, which distinguished the use of the Erb pat-

ent from a similar process on the basis that it did not use leaves.

Finally, Mobil presented evidence that Mr. Cox was fired as AERT's patent counsel shortly before AERT's disclosure statement was due. Mr. Cox testified that he was told it was because his services were too expensive, he was taking longer than anticipated, and that AERT desired to give its patent work to someone else. Mr. Brooks did not testify about his reasons for firing Mr. Cox. In light of all the circumstances and absent an explanation from Mr. Brooks, the Court finds it reasonable to infer that AERT removed Mr. Cox as patent counsel to facilitate its attempt to keep the PTO unaware of Hearthbrite.

Having determined that information regarding the process used by Hearthbrite, Rivenite and Juniper products to be material, and having further determined that AERT withheld this information from the PTO with the intent to deceive the PTO, the Court must balance the materiality of the Hearthbrite information against AERT's culpability to determine if a finding of inequitable conduct is warranted. Balancing the high materiality of the information regarding the process used at Hearthbrite, a process with which AERT was intimately familiar, with the circumstantial evidence suggesting that AERT withheld this information with an intent to deceive the PTO, the Court concludes that AERT acted inequitably in prosecuting the four patents in suit. Therefore, the Court concludes each of AERT's patents in suit is unenforceable.

## C. Material Misrepresentation Regarding the Erb Patent

Mobil also requests the Court to enter a judgment of unenforceability on the basis of a wholly independent ground of inequitable conduct. In response to Interrogatory Number 21, the jury found that AERT made a material misrepresentation in prosecuting its patents.

During the prosecution of the initial patent application, which eventually led to the '910 patent, the PTO rejected certain claims in the application on the grounds that they

were obvious in light of the Erb patent.[2] AERT filed an amendment, attempting to distinguish the Erb patent. In this amendment, AERT claimed that Erb should not bar the issuance of the patent on obviousness grounds. AERT argued to the patent examiner:

> As indicated by the Examiner, Erb lacks disclosure of the employment of the elongated wood fibers and also the reversibility of the conveyor means....
>
> In claim 23 the use of elongated wood fibers is more than a matter of selection of work materials. It is respectfully submitted that the nature of the material for which the system is employed gives rise to different problems which are solved with the unique combination of applicant's invention. Therefore in this regard while the encapsulation process of wood fibers is not fully understood it has been found that with other equipment bonding and encapsulation aids are required which are not needed with applicant's invention. A process which might be usable for coating ground up leaves does not give rise to suitable system for coating wood fibers....

As with the jury's finding regarding AERT's failure to disclose information related to Hearthbrite, the jury's finding that AERT's statements attempting to distinguish the Erb patent were misrepresentations is well supported by the trial evidence.

Mobil presented evidence that Hearthbrite successfully incorporated the use of wood scraps into the process disclosed by the Erb patent. Moreover, there was sufficient evidence that Mr. Brooks and the inventors were aware of this. Accordingly, the Court adopts the jury's findings with regard to this misrepresentation as well.

AERT argues at some length that Mobil has pointed to no evidence that AERT made this statement with the intent to deceive the PTO and moreover, that AERT actually believed the statement to be true. However, in this instance, direct evidence of an intent to deceive is unnecessary. The misstatement regarding the Erb patent's unsuitability for wood fibers itself creates an inference of bad faith. The fact that AERT knew that the process used at Hearthbrite or Rivenite utilized the Erb patent with wood fibers rather than leaves, together with the fact that AERT did not disclose information regarding the process used at Hearthbrite convinces the Court that AERT intended to deceive the PTO. Absent affirmative evidence of good faith on the part of AERT's counsel or the inventors, the Court finds that AERT acted in bad faith.

Balancing the materiality of AERT's misstatements regarding the Erb patent with the lack of indicia of good faith, the Court concludes that AERT acted inequitably in misrepresenting to the PTO the viability of the Erb patent when used with wood.

### III.  *CONCLUSION*

For the reasons discussed, the Court concludes that the four [3] AERT patents are unenforceable due to AERT's inequitable conduct before the PTO during the prosecution of the patents.

---

2.  The office action rejecting the patent stated:

> Claims 23–26 are rejected under 35 U.S.C. § 103 as being unpatentable over Erb (column 5, lines 14–19; column 5, lines 61–64; column 6, lines 42–66) in view of either of Goettler ('743 and '144).
>
> Erb discloses the basic claimed system for making synthetic wood-type products from recycled waste lacking essentially the employment of a fiber and the instant cutting and reversible conveyor means. Note that the employment of hardwood fibers constitutes a mere matter of final product desired or material worked on, neither of which would impart materiality to the instant apparatus.... It

would have been obvious to one of ordinary skill in the art to substitute fibers for leaves in the primary reference to obtain a product of increased dimensional reinforcement.

3.  AERT argues that the Erb patent misrepresentation was made only during the prosecution of one of the four patents and thus should not render the other three patents unenforceable. However, this argument ignores that the patents are rendered unenforceable on a wholly independent ground. Moreover, as Mobil argues, the other three patents were continuation-in-part patents, thus supporting the unenforceability of each.