168 F.3d 28
 49 U.S.P.Q.2d 1853
 ELK CORPORATION OF DALLAS, Plaintiff-Appellant,
v.
GAF BUILDING MATERIALS CORPORATION, Building Materials
Corporation of America, Building Materials Corporation of
America d/b/a GAF Materials Corporation, and GAF Materials
Corporation, Defendants-Appellees.
 No. 98-1369.
 United States Court of Appeals,
Federal Circuit.
 Feb. 11, 1999.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
April 16, 1999.
 
 John D. Murnane, Baker & Botts, L.L.P., of New York, New York, argued for plaintiff-appellant. With him on the brief were Arthur S. Tenser, Robert Neuner and Neil P. Sirota. Also on the brief was Larry D. Carlson, Baker & Botts, L.L.P., of Dallas, Texas.
 Samuel D. Rosen, Paul, Hastings, Janofsky & Walker, of New York, New York, argued for defendants-appellees. With him on the brief was Brendan J. O'Rourke. Also on the brief was Charles A. Gall, Jenkins & Gilchrist, of Dallas, Texas.
 Before MICHEL, PLAGER, and RADER, Circuit Judges.
 PLAGER, Circuit Judge.
 
 
 1
 The question in this design patent case is whether U.S. Patent No. Des. 344,144 (the '144 patent) is unenforceable due to inequitable conduct in its prosecution. The district court so held.[1] Because the district court did not abuse its discretion in holding the '144 patent unenforceable, we affirm.
 
 BACKGROUND
 
 2
 Elk Corporation of Dallas (Elk) brought a patent infringement action against defendants, GAF Building Corporation of America, Building Materials Corporation of America, Building Materials Corporation of America d/b/a GAF Materials Corporation, and GAF Materials Corporation (collectively, GAF), alleging that GAF infringed Elk's '144 patent. GAF counterclaimed by filing for a declaratory judgment that Elk's design patent is unenforceable due to inequitable conduct by the patent applicants and their patent attorney in the prosecution of the patent.
 
 
 3
 Elk and GAF are manufacturers of roofing shingles. In 1975, GAF obtained a patent, U.S. Patent No. 3,921,358 (the Bettoli patent), for two-ply, composite roofing shingles which are often referred to as "laminated shingles." GAF granted licenses under the Bettoli patent to many manufacturers, including Elk, to manufacture and sell two-ply, composite roofing shingles. In the late 1980s four inventors, some of whom were Elk employees, began developing a two-ply, composite roofing shingle based on the Bettoli patent that utilized striations of shading to simulate the appearance of depth.
 
 
 4
 In anticipation of applying for a design patent on the new shingle, Casimir Weaver, one of the inventors, arranged for a patentability search on the newly developed roofing shingle. In his letter requesting the search, Mr. Weaver acknowledged the similarity of the new design to the shingles disclosed in the Bettoli patent:
 
 
 5
 The enclosed sketch describes this [new] product's appearance. This shingle's construction is similar to the one described in Bettoli's patent No. 3,921,358 which is also enclosed.
 
 
 6
 A search was made and Mr. Weaver was sent a search report. One of the patents discussed in the search report was U.S. Patent No. 2,036,329 (the Giles patent). After reviewing the search report, Mr. Weaver wrote a memo to a co-inventor pointing out that the Giles patent was "[o]f special interest." The search report and Mr. Weaver's memo were forwarded to a patent attorney at Baker & Botts, L.L.P.[2]
 
 
 7
 During the prosecution of the '144 patent, a number of prior art patents covering different shingles or parts of shingles, including U.S. Patent. No. Des. 309,027 (the Noone patent), U.S. Patent No. 3,613,328 (the Morgan patent), and U.S. Patent. No. 2,253,652 (the Ritter patent), were disclosed to the Patent and Trademark Office (PTO). Neither the Noone patent, the Morgan patent, nor the Ritter patent made mention of either the Bettoli patent or the Giles patent. The Bettoli and Giles patents, themselves, were never disclosed to the PTO despite the fact that it was the standard practice of the patent attorney who completed the prosecution of the '144 patent to disclose all of the prior art cited in a search report. In contrast, during the prosecution of a continuation of the '144 patent, both the Bettoli and Giles patents were disclosed to the PTO.
 
 
 8
 In its counterclaim, GAF alleged that the applicants had committed fraud on the PTO by various means, including by intentionally withholding the Bettoli and Giles patents and by proffering arguments to the examiner during the prosecution of the '144 patent that could not have been made had the Bettoli and Giles patents been disclosed. In addition, GAF alleged that the applicants had intentionally withheld their knowledge of a commercialized Bettoli-type shingle known as the GS High Sierra. The district court found, inter alia, that the Bettoli and Giles patents and information about the GS High Sierra were material, that the applicants had knowledge of the materiality of the patents and information, and that they withheld the patents and information from the PTO with an intent to deceive. See Elk Corp. v. Building Materials Corp., No. 3:94-CV-0249-P, slip op. at 10, 14, 27-28, 1997 WL 796004 (N.D.Tex. Oct. 10, 1997). In addition, the district court found that in order to overcome an initial rejection the applicants had made arguments concerning the prior art cited by the examiner that could not have been made had they disclosed the far more material Bettoli and Giles patents. See id. at 20. In light of all the circumstances, the district court concluded that the applicants' conduct was so culpable that Elk's '144 patent should not be enforced. See id. at 28. Elk appeals the district court's final judgment against it.
 
 DISCUSSION
 
 9
 Applicants for patents, including their patent attorneys, are required to prosecute patent applications in the PTO with candor, good faith, and honesty. See Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1826 (Fed.Cir.1995); see also 37 C.F.R. § 1.56. A breach of this duty may constitute inequitable conduct. Although the district court considered multiple allegations that the applicants had breached their duty of candor, we focus on the most pertinent allegations - those that involve the withholding of the Bettoli and Giles patents.
 
 
 10
 Inequitable conduct due to failure to disclose material information must be proven by clear and convincing evidence of: (1) prior art that was material; (2) knowledge chargeable to an applicant of that prior art and of its materiality; and (3) failure of the applicant to disclose the art resulting from an intent to mislead the PTO. See Molins, 48 F.3d at 1178, 33 USPQ2d at 1827; FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987). Such proof of inequitable conduct may be rebutted by a showing that: (a) the prior art was not material; (b) if the prior art was material, a showing that the applicant did not know of that art; (c) if the applicant did know of that art, a showing that the applicant did not know of its materiality; or (d) a showing that the applicant's failure to disclose the art did not result from an intent to mislead the PTO. See id.
 
 
 11
 Because inequitable conduct is an equitable issue committed to the discretion of the district court, we review a determination of inequitable conduct for abuse of discretion. See Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (en banc). We may reverse a district court's decision on inequitable conduct only if the decision is based upon "clearly erroneous findings of fact or on a misapplication or misinterpretation of applicable law, or evidences a clear error of judgment on the part of the district court." Id.; Molins, 48 F.3d at 1178, 33 USPQ2d at 1827. The district court's factual determinations of materiality and intent are subject to the clearly erroneous standard and will not be disturbed unless this court has a "definite and firm conviction that a mistake has been committed." Id.
 
 
 12
 On the question of whether the prior art Bettoli and Giles patents were material, Elk argues that the district court erred in finding the Bettoli and Giles patents material because they were merely cumulative of certain patents that were disclosed to the PTO during the prosecution of the '144 patent. According to Elk, the Bettoli patent was merely cumulative of the Morgan and Noone patents, and the Giles patent was merely cumulative of the Ritter and Noone patents.
 
 
 13
 Information is "material" when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. See Molins, 48 F.3d at 1179, 33 USPQ2d at 1827. However, an otherwise material reference need not be disclosed if it is merely cumulative of or less material than other references already disclosed. See Halliburton Co. v. Schlumberger Technology Corp., 925 F.2d 1435, 1440, 17 USPQ2d 1834, 1839 (Fed.Cir.1991); Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1328, 47 USPQ2d 1225, 1229 (Fed.Cir.1998).
 
 
 14
 Differences between the Bettoli patent and the Morgan and Noone patents support the district court's finding that the Bettoli patent was material. For instance, the Morgan patent, which predates the Bettoli patent, discloses a different type of shingle, a single-ply, strip shingle, than the two-ply, composite shingle disclosed in the Bettoli patent. In addition, the Noone patent, a design patent covering the ornamental design for only the tab portion of a single-ply strip shingle, could not be cumulative of the Bettoli patent which describes an entire two-ply composite shingle. Because the Morgan and Noone patents disclose a different shingle, the Bettoli patent is not cumulative of those patents. In addition, the Bettoli patent is not less material than the Morgan or Noone patents because the design claimed in the '144 patent is for a two-ply, composite shingle, not a single-ply, strip shingle. Thus, the district court did not clearly err in finding that the Bettoli patent was the most material prior art and that the Bettoli patent was not cumulative of the Morgan and Noone patents which were cited to the PTO.
 
 
 15
 Similarly, differences between the Giles patent and the Ritter and Noone patents support the district court's finding that the Giles patent was material. The Giles patent discloses shingles with blended horizontal shadings across each simulated shingle, whereas the Ritter patent discloses a discrete, continuous dark line across the tops of shingles. The Noone patent is also different from the Giles patent because it teaches discrete vertical zones of shading. Thus, because neither the Noone patent nor the Ritter patent discloses the same shading as the Giles patent, the Giles patent cannot be cumulative of those patents. In addition, the Giles patent is not less material than the Ritter or Noone patents because the design claimed in the '144 patent for laminated shingles with three horizontal striations that appear to blend into each other across a simulated shingle is more similar to the blended shading of shingles in the Giles patent than the shadings in the Ritter or Noone patents. Thus, the district court did not clearly err in finding that the Giles patent was material and was not cumulative of the Ritter and Noone patents which were cited to the PTO.
 
 
 16
 Besides the prior art disclosed to the PTO, the district court also considered other circumstances relating to the materiality of the Bettoli and Giles patents and the applicants' knowledge of those patents. With respect to the Bettoli patent, there was evidence that the applicants' new shingle design was an improved Bettoli-type laminated roofing shingle; that Mr. Weaver's letter, requesting a search report, revealed that the applicants knew that the new shingle was very similar to the shingle disclosed in the Bettoli patent; and that the testimony of the prosecuting attorney indicated that there was a strong likelihood the prosecuting attorney also knew of the materiality of the Bettoli patent. These factors further support the district court's findings of the high level of materiality of the Bettoli patent and the applicants' knowledge of that materiality.
 
 
 17
 With regard to the Giles patent, additional support for the district court's findings of materiality and knowledge are found in the search report and in Mr. Weaver's memo to a co-inventor. The search report, which was reviewed by both Mr. Weaver and the prosecuting attorney, listed and discussed the Giles patent. In addition, Mr. Weaver's memo contained his admission that the Giles patent was important. Based upon the foregoing, the district court's findings of materiality and knowledge of materiality of the Bettoli and Giles patents were not clearly erroneous.
 
 
 18
 With regard to the intent of the applicants to deceive the PTO, our precedent has recognized that intent need not, and rarely can, be proven by direct evidence. See Merck & Co. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1422, 10 USPQ2d 1682, 1686 (Fed.Cir.1989). Rather, this element of inequitable conduct must generally be inferred from the facts and circumstances surrounding the applicants' overall conduct. See Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1190, 25 USPQ2d 1561, 1567 (Fed.Cir.1993); Merck, 873 F.2d at 1422, 10 USPQ2d at 1686. Moreover, we have recognized that the more material the omission, the less the degree of intent that must be shown to reach a conclusion of inequitable conduct. See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256, 43 USPQ2d 1666, 1668 (Fed.Cir.1997); Akzo N.V. v. United States Int'l Trade Comm'n, 808 F.2d 1471, 1481-82, 1 USPQ2d 1241, 1247 (Fed.Cir.1986). In light of all the circumstances of the case, as described above, we cannot say that the district court's finding of intent to mislead was clearly erroneous.
 
 
 19
 Finally, given the factual findings on which the district court's judgment stands, we cannot conclude that the district court abused its discretion in determining that the behavior of the applicants and their prosecuting attorney constituted inequitable conduct. Accordingly, the district court's judgment that Elk's '144 patent is unenforceable due to inequitable conduct is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Elk Corp. v. GAF Bldg. Materials Corp., No. 3:94-CV-0249-P (N.D.Tex. Apr. 17, 1998)
 
 
 [2]
 Elk's '144 patent was initially prosecuted by Roy Van Winkle. When Mr. Van Winkle retired, Thomas Felger assumed responsibility