**LIFESCAN, INC., Plaintiff,**

v.

**HOME DIAGNOSTICS, INC., and MIT Development Corp., Defendants.**

No. Civ.A. 96–597–JJF.

United States District Court, D. Delaware.

June 20, 2000.

Richard D. Kirk of Morris, James Hitchens & Williams, Wilmington, DE, Philip S. Johnson, Dianne B. Elderkin, Joseph Lucci, Barbara L. Mullin, and Lynn A. Malinoski, of Woodcock Washburn Kurtz MacKiewicz & Norris LLP, Philadelphia, PA, for, plaintiff.

Arthur G. Connolly, Jr., Arthur G. Connolly, III, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Michael L. Donovan,

Paul S. Roselund, Peter J. Whalen and Anne Marie Heimberger, Hancock Rothert & Bunshoft LLP, San Francisco, CA, for defendants.

## OPINION

FARNAN, Chief Judge.

This action was brought by Plaintiff, LifeScan Inc., against Defendants, Home Diagnostics, Inc. and MIT Development Corp., for infringement of U.S. Patent Number 5,049,487 (the "'487 Patent"). Defendants raised a number of defenses to Plaintiff's allegations of infringement, including a claim that the '487 Patent is unenforceable due to Plaintiff's inequitable conduct before the U.S. Patent and Trademark Office (the "PTO"). A nine day jury trial was held and the jury returned a verdict in favor of Defendants on the issue of literal infringement and in favor of Plaintiff on the issues of infringement under the doctrine of equivalents and validity.[1] Although the parties presented evidence during trial regarding the inequitable conduct issue, the parties could not agree on whether the issue should be submitted to the jury. Defendants requested that the issue be submitted to the jury for an "advisory verdict," and Plaintiff opposed Defendants' position. (Tr. 2568:23–2570:15, 2571:10–2572:6). Resolving the matter, the Court concluded that it would address the inequitable conduct issue separately as a bench matter without an advisory verdict from the jury. (Tr. 2572:8–2574:15). The parties briefed this issue post-trial, and this Opinion encompasses the Court's findings of fact and/or conclusions of law on the question of whether Plaintiff committed inequitable conduct before the PTO rendering the '487 Patent unenforceable.

## BACKGROUND

In support of their allegations of inequitable conduct, Defendants contend that Plaintiff knowingly and intentionally deceived the Patent Examiner regarding material information pertaining to the "Garcia Technology" and the Kodak Ektachem DT60. Specifically, Defendants contend that Plaintiff knowingly and intentionally (1) failed to disclose material information it had regarding the NovoCheck and Answer blood glucose meters; (2) misrepresented the Garcia patents to the Patent Examiner; and (3) failed to disclose material information regarding the technology utilized in Kodak's Ektachem DT60. The following background information is pertinent to Defendants' allegations.

The NovoCheck and Answer meters are commercial embodiments of technology developed by Fernando Garcia. In February 1987, Richard Wiesner, a senior vice-president of LifeScan received a newspaper article dated February 15, 1987 about Fernando Garcia and his blood glucose technology. (Tr. 256:6–258:15). The article disclosed that Mr. Garcia and Garid, Inc. (assignee of the Garcia patents) had developed a portable glucose meter which utilized an automatic timer. The article included a picture of the new meter and disclosed that Novo Industri A/S signed a licensing agreement with Garid in June 1986 and provided Garid with $2.25 million to produce the device. (DX 451, Tr. 259:4–10).

In September 1987, the NovoCheck meter, a device embodying the Garcia technology, was introduced at a trade show. (Tr.1917:13–14). At this same trade show, Plaintiff introduced its One Touch meter which is the commercial embodiment of the '487 Patent. (Tr. 2237:18–2238:13). Mr. Wiesner attended the trade show with other LifeScan executives, including Richard Thompson and Leland Wilson. During the trade show, Mr. Thompson had the NovoCheck meter demonstrated to him. (Tr. 2238:19–21).

On September 21, 1987, Mr. Wilson drafted a memo directed to all Plaintiff's officers and directors regarding the NovoCheck meter. In the memo, Mr. Wilson described the NovoCheck meter as "an

---

1. Defendants challenged the jury's verdict in a separate motion for judgment as a matter of law and requested a partial new trial. The Court addressed these issues in a separate Opinion and Order.

exciting product with amazingly similar technology to the One Touch." (2070:21–2071:1, DX 186). Although the memorandum remarked that the NovoCheck meter had automatic timing, the memo did not further describe how the meter worked.

In 1990, Plaintiff's employees analyzed the Answer meter, a device marketed by Wampole Laboratories ("Wampole") and acknowledged to be the "reincarnation" of the NovoCheck meter. These employees documented their opinions and observations regarding the Answer meter in various memoranda. (DX 187, 236). In addition, a March 30, 1990 memo prepared by Barbara Cisternino indicated that Ms. Cisternino placed her name on Wampole's mailing list in order to obtain additional information about the Answer meter. (DX 447).

On November 7, 1990, Mr. Coletti, a patent attorney representing Plaintiff, sent a letter to Wampole suggesting that the '346 Patent[2] "may relate to" the Answer meter and asking for Wampole's view on the issue. (DX 235). On December 11, 1990, Kevin Clarke, counsel for Wampole's parent company, Carter–Wallace, responded to the letter and stated his position that the technology disclosed in Plaintiff's '346 Patent "is essentially the same as or similar to the technology employed in the operation of our product [the Answer meter]" and that "this technology is also disclosed in and claimed in the patents noted above [the Garcia patents] as covering our product." (DX 217). Mr. Clarke included in his letter copies of the three Garcia patents. After receiving Mr. Clark's letter, Plaintiff did not pursue any further contact with Wampole. (Tr. 1417:8–11).

On January 3, 1991, during the prosecution of the '487 Patent, Plaintiff's patent attorney, Dr. Richard Neeley, submitted an Information Disclosure Statement ("IDS") and a PTO 1449 form. (PX 334 at

103–104, 112). The IDS and the PTO 1449 form cited the three patents issued to Garcia, U.S. Patent Nos. 4,627,445, 4,637,403 and 4,787,398, and the IDS summarized the technology of these patents. (PX 334 at 103–104 & 112). In addition copies of each of the three patents were submitted to the Examiner. The Examiner's initials on the PTO 1449 indicate that the Examiner considered each of these references. (PX 334 at 112).

## DISCUSSION

### I. The Inequitable Conduct Standard

 As a general matter, patent applicants and their patent attorneys have a duty of candor, good faith and honesty in their dealings with the PTO. 37 C.F.R. § 1.56(a). The duty of candor, good faith and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application. *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed.Cir.1999). Breach of the duty of candor, good faith and honesty may constitute inequitable conduct. *Id.* If it is established that a patent applicant engaged in inequitable conduct before the PTO, the entire patent application so procured is rendered unenforceable. *Kingsdown Medical Consultants v. Hollister Incorporated,* 863 F.2d 867, 877 (Fed.Cir.1988).

 To establish inequitable conduct due to the failure to disclose material information or the submission of false information, the party raising the issue must prove by clear and convincing evidence that (1) the information is material; (2) the knowledge of this information and its materiality is chargeable to the patent applicant; and (3) the applicant's submission of false information or its failure to disclose

---

**2.** In August 1986, Plaintiff filed a patent application for technology related to monitoring levels of glucose in the blood. This application issued as U.S.Patent No. 4,935,346 (the "'346 Patent") on June 19, 1990. A division application filed on February 11, 1988 issued as the '487 Patent on September 17, 1991.

this information resulted from an intent to mislead the PTO. *Id.* Information is deemed material if there is a substantial likelihood that a reasonable Examiner would have considered the material important in deciding whether to issue the application as a patent. *See Elk Corp.,* 168 F.3d at 31; *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.,* 869 F.Supp. 251, 254 (D.Del.1994). Accordingly, a reference does not have to be prior art to be material information that must be disclosed to the PTO. *See* 37 C.F.R. § 1.56; *Mobil Oil Corp.,* 869 F.Supp. at 255. Further, "an otherwise material reference need not be disclosed if it is merely cumulative of or less material than other references already disclosed." *Elk Corp.,* 168 F.3d at 31.

 Intent to deceive is rarely established by direct evidence, and therefore, may be inferred from the facts and circumstances surrounding the applicant's overall conduct. *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1180 (Fed.Cir.1995). In determining whether the applicant's overall conduct evidences an intent to deceive the PTO, the Federal Circuit has emphasized that the challenged "conduct must be sufficient to require a finding of deceitful intent in the light of all the circumstances." *Kingsdown Medical Consultants,* 863 F.2d at 873. Once materiality and intent have been established, the court must conduct a balancing test to determine "whether the scales tilt to a conclusion that 'inequitable conduct' occurred." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed.Cir.1997). Generally, the more material the omission, the less the degree of intent that must be shown to reach a conclusion of inequitable conduct. *Elk Corp.,* 168 F.3d at 32.

 The question of whether inequitable conduct occurred is equitable in nature. As such, the ultimate question of whether inequitable conduct occurred is committed to the sound discretion of the trial court. *Elk Corp.,* 168 F.3d at 30–31; *Kingsdown Medical Consultants,* 863 F.2d at 876.

## II. Whether Defendants' Established That Plaintiff Committed Inequitable Conduct Before the PTO Rendering The '487 Patent Unenforceable

### A. Whether Plaintiff Withheld Material Information Concerning the Garcia Technology

In arguing that Plaintiff committed inequitable conduct before the PTO, Defendants contend that Plaintiff withheld from the Patent Examiner material information concerning the Garcia Technology. Specifically, Defendants contend that Plaintiff withheld its knowledge concerning the NovoCheck and Answer meters.

In response to Defendants' allegations, Plaintiff contends that it did not omit material information during the prosecution of the '487 Patent, because it disclosed the three Garcia patents, upon which the NovoCheck and Answer meters were based, to the Patent Examiner and the Examiner considered these references. In addition, Plaintiff argues that the NovoCheck and Answer meters did not need to be disclosed to the Patent Examiner, because the Court has already ruled that these devices did not constitute prior art.

#### 1. Materiality

Plaintiff's argument that its knowledge concerning the NovoCheck and Answer meters is not material because the Court concluded that the meters were not prior art is without merit. As the Court previously stated, a reference need not be prior art to constitute material information for the purposes of determining whether the failure to disclose such information amounts to inequitable conduct. *Mobil Oil Corp.,* 869 F.Supp. at 255. Rather, the primary inquiry for materiality purposes is whether a reasonable Examiner would have considered the information important in deciding whether to issue the application as a patent. *Id.* at 254. Given the significance of Garcia's work in this area

and the arguable similarities between the '487 Patent and the Answer and Novo-Check meters the Court cannot conclude that a reasonable Patent Examiner would find these devices and the scientific reports conducted by Plaintiff on these devices immaterial.

■ However, an otherwise material reference need not be disclosed if it is cumulative or less material than other references already disclosed. *Elk Corp.*, 168 F.3d at 31. It is not disputed that Plaintiff disclosed the three Garcia patents to the Patent Examiner in both an IDS and a Form 1449. That the Patent Examiner considered these references is evidenced by her initials on the Form 1449. Thus, the question becomes whether the Answer and NovoCheck meters and the related scientific reports are cumulative or less material than the Garcia patents which were disclosed. Plaintiff contends, and the evidence offered by Defendants' at trial supports, that the Answer and NovoCheck meters were commercial embodiments of the Garcia patents. For example, Garcia's co-inventor Paul Anderson testified that the Garcia '403 Patent disclosed the Med–Pen device (Tr.1912:19–1915:20; 2017:10–19); and that this device was "the same thing" as the NovoCheck meter. (Tr. 1917:1–1918:7). Similarly, the letter from Carter–Wallace to Plaintiff, as well as the Answer meter's box, indicates that the Answer meter was based on the technology disclosed and claimed in the three Garcia patents. (DX 217; DX 252A; Tr. 1434:14–1435:2). Because the primary sources upon which these devices were based were disclosed to the Patent Examiner, the Court concludes that the Answer and NovoCheck meters and the reports related to them were cumulative references or less material references than the references already disclosed by Plaintiff, and therefore, their omission does not constitute a breach of the duty to disclose.

■ In a related argument, Defendants contend that Plaintiff should have disclosed to the PTO a 1987 article about the Garcia technology. As for this reference, the Court cannot conclude that it would have been material to the Patent Examiner's consideration. The 1987 newspaper article gave no technical details concerning the operation of Garcia's invention, and merely announced that a blood sugar measuring device called the Med Pen was not yet publicly available, but would be forthcoming. (Tr. 292:2–17, 292:21–293:2, DX 451). Indeed, rather than providing the reader with a scientific perspective on the forthcoming technology, the article appears to be more directed to the financial and investment aspects of Mr. Garcia's company, Garid. Therefore, the Court concludes that the 1987 newspaper article would have offered little, if anything, to the Patent Examiner's consideration of the patentability of the '487 Patent. Moreover, even if the newspaper article were material, it is certainly less material than the three Garcia patents which were disclosed and which reveal the "nuts and bolts" of the Garcia technology. Accordingly, the Court rejects Defendants' argument that the omission of the 1987 newspaper article evidences a breach of the duty to disclose.

Lastly, to the extent that Defendants argue that Plaintiff should have disclosed the September 1987 memorandum prepared by Plaintiff's marketing director, Lee Wilson, the Court likewise rejects Defendants' argument. Like the newspaper article discussed previously, the memorandum offers no technological information about how the NovoCheck meter works. Further, the memorandum expressly indicates that some of its information "may not be factual but is reported as a bases [sic] for continuing discussions." (DX 186). As such, the Court concludes that the September 1987 memorandum would have offered little to the Patent Examiner's patentability inquiry. (Tr. 293:20–24). Accordingly, the Court concludes that Plaintiff's omission of this memorandum did not amount to a breach of the duty to disclose, and therefore, Defendants have not establish

that Plaintiff committed inequitable conduct during the prosecution of the '487 Patent.

### 2. Intent to Deceive

Even if the previously discussed information was material and not cumulative, the Court concludes that Defendants have not established by clear and convincing evidence that Plaintiff intended to mislead the PTO. Defendants place great weight on the September 1987 memorandum prepared by Mr. Wilson stating that the NovoCheck meter was "amazingly similar" to the One Touch meter to suggest that Plaintiff intended to mislead the PTO by withholding information concerning the NovoCheck meter. After reviewing this memorandum and the trial testimony related to it, the Court believes Defendants overstate the significance of this memorandum. At the time the memo was written, Mr. Wilson was a salesman and not an engineer. Mr. Wilson testified at trial that in his assertion that the NovoCheck utilized "amazingly similar technology" he was not "talking about the technical operation of it as much as he was talking about the benefits of it in the way of not having the technique aspect of it." (Tr. 261:6–18). Mr. Wilson further testified that he never understood the technical details related to any glucose meter, and therefore, Mr. Wilson's statement of similarity between the NovoCheck and One Touch meters cannot be construed to suggest that Plaintiff knew of the materiality of the NovoCheck. In addition, the memorandum explicitly states that information contained therein "may not be factual" which belies Defendants' suggestion that this memorandum evidences that Plaintiff knew the NovoCheck meter was material.

Defendants also rely on Plaintiffs' interest in following the Garcia technology, including its scientific analyses of the Answer meter, to suggest that Plaintiffs intended to deceive the PTO. However, there is also evidence suggesting that much of Plaintiff's interest was generated by competitive and marketing concerns and not by any intent to deceive the PTO. (Tr. 263:13–19). Moreover, the evidence also suggests that, upon becoming aware of the possible significance of the Garcia technology to the '487 Patent through both its analysis of the Answer meter in August 1990 and the representations of Carter–Wallace in their November 1990 letter, Plaintiff promptly disclosed the Garcia patents to the Patent Examiner. Indeed, Plaintiff filed the IDS on January 3, 1991, only three weeks after receiving the Carter–Wallace letter. That Plaintiff promptly reported the Garcia patents to the Examiner once their possible relevance was confirmed evidences Plaintiff's good faith and contradicts Defendants' unsupported assertion that Plaintiff dropped its interest in pursuing Wampole because "they knew that an infringement suit would bring these facts to light and possibly invalidate [Plaintiff's] patents." (D.I. 443 at 8).

Given the mix of evidence on the question of intent, including evidence indicating Plaintiff's good faith, the Court concludes that Defendants have not established by clear and convincing evidence sufficient culpability to require the Court to find that Plaintiff intended to deceive the PTO. Accordingly, the Court concludes that Defendants have not established that Plaintiff committed inequitable conduct during the prosecution of the '487 Patent.

### B. *Whether Plaintiff Submitted Materially False Information Concerning the Garcia Technology*

Defendants next contend that when Plaintiff disclosed the Garcia patents in the IDS, the disclosure was "highly misleading." (D.I. 443 at 10). Specifically, Defendants direct the Court to Plaintiff's statement in the IDS that the Garcia patents "taught that 'measurements are made at specified time intervals dictated by an internal clock which is *initiated by the exertion of pressure into the system or by a switch triggered by the puncture de-*

vice.' " (D.I. 443 at 11 (emphasis in original), citing PX 334 at 103). Plaintiff contends that this statement was misleading because Plaintiff knew from its analyses on the Answer meter that the Garcia patents disclosed automatic timing like that claimed in the '487 Patent.

After reviewing the record as it relates to this issue, the Court concludes that Defendants have not established, in the first instance, that this statement was false or misleading. To the contrary, the trial testimony of Defendants' technical expert, Mr. Scherer confirmed that Plaintiff's description of the timing device in the Garcia patents was accurate. Specifically, with regard to the Garcia '398 Patent, Mr. Scherer testified that an internal timer was started as a result of firing a lance and once started, the timer controls when the measurements are taken during the incubation cycle. (Tr. 1853:11–15, 1866:14–1868:7). Mr. Scherer further agreed that in the Garcia '398 Patent, the device begins to take reflectance measurements at intervals after the firing of the lance. (Tr. 1867:4–9). With regard to the Garcia '445 and '403 Patents, Mr. Scherer also confirmed that the timing device disclosed in each of these patents is initiated upon pressure being exerted into the system. (Tr. 1849:7–1853:10, 1864:24–1866:6). Defendants have not directed the Court to any evidence contradicting their expert witness's opinion, and therefore, the Court concludes that Defendants have not established that Plaintiff's statement in the IDS was false or misleading.

 Further, even if Plaintiff's characterization of the Garcia patents was inaccu-

rate, the Court concludes that this characterization would not rise to the level of a material misrepresentation. As the Federal Circuit has recognized, the mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention. *Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d 1471 (Fed.Cir. 1986); *Gargoyles Inc. v. U.S.*, 32 Fed.Cl. 157, 33 U.S.P.Q.2d 1595, 1605 (1994). In this case, Plaintiff submitted the Garcia Patents with the IDS for the Examiner's review. Accordingly, the Court cannot conclude that Plaintiff's attempt to distinguish the prior art from the '487 Patent was a material misrepresentation.

**C. Whether Plaintiff Deceived the PTO as to the Kodak Ektachem or DT60 Analyzers**

Defendants contend that Plaintiff deceived the PTO by failing to disclose to the Patent Examiner the Kodak Ektachem DT60 technology. Specifically, Defendants contends that Plaintiff failed to disclose that the Kodak Ektachem DT60 Clinical Analyzer utilizes an optical detector that initiates timing upon sensing a drop in reflectance.

In response to Defendants' allegation, Plaintiff contends that Defendants improperly raised this argument for the first time in their post-trial brief, and therefore, Defendants failed to plead this allegation in accordance with Fed.R.Civ.P. 9(b).[3] Plain-

---

**3.** Plaintiff correctly points out that this Court has recognized the applicability of Fed. R.Civ.P. 9(b) to pleadings of inequitable conduct. *See EMC Corp. v. Storage Technology Corp.*, 921 F.Supp. 1261, 1263 (D.Del.1996). However, Fed.R.Civ.P. 15(b) also states:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may

be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues.

Defendants did not respond to Plaintiff's Rule 9(b) argument in their briefing, and at oral argument neither Plaintiff nor Defendants addressed the DT60 or the failure to comply with Rule 9(b). Given the parties'

tiff further contends that they did not deceive the PTO, because the DT60 technology was before the Patent Examiner.

The parties agree that the DT60 analyzer is a commercial embodiment of the Jessop Patent. (D.I. 443 at 12; D.I. 456 at 14). Indeed, Defendants' expert, Mr. Scherer, testified at trial that there was "basically, no difference" in the timing method of the DT60 device and the Jessop Patent, and that the DT60 system was "taught by Jessop." (Tr. 1784:14–17, 1788:4). Further, the record is clear that the Examiner considered the Jessop Patent repeatedly before allowing the '487 Patent. (1837:15–23; PX 334 at 63–64, 89–90). Given that the DT60 system was taught by Jessop and the Patent Examiner considered the Jessop Patent at length, the Court concludes that the DT60 was a cumulative reference, the non-disclosure of which does not amount to inequitable conduct.[4]

■■■ However, even if the DT60 was a material reference which was not disclosed to the Patent Examiner, the Court concludes that Defendants have not established by clear and convincing evidence that Plaintiff intended to deceive the PTO.

Although Mr. Coletti testified that he was "aware of a Kodak device," he did not admit, as Defendants suggest, that he was familiar with the technology of the DT60. (Tr. 1400:18–23). Mere awareness of a withheld reference is insufficient to establish intent to deceive the PTO. *See Halliburton Company v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1442–443 (Fed.Cir.1991). Accordingly, the Court concludes that Defendants failed to establish by clear and convincing evidence that Plaintiff intended to deceive the PTO.

## CONCLUSION

For the reasons discussed, the Court concludes that Defendants have not established by clear and convincing evidence that Plaintiff committed inequitable conduct during the prosecution of '487 Patent. Accordingly, the Court concludes that the '487 Patent is not unenforceable.

An appropriate Order will be entered.

---

failure to "flesh out" their positions with respect to the application of Rule 9(b) and Rule 15(b), the Court is hesitant to dismiss Defendants' claim of inequitable conduct to the extent that it is based on Plaintiff's failure to disclose the DT60. However, by way of comment, the Court does not believe that this issue was properly pled by Defendants. Defendants' Answer (D.I.6) alleges that the '487 Patent is invalid and unenforceable because Plaintiff "failed to disclose relevant prior art" to the PTO. However, the Answer does not specify what prior art Defendants are referring to, and the Answer was never amended or supplemented to provide more detail. *See EMC Corp.*, 921 F.Supp. at 1263 (holding that "[p]leadings that disclose the name of the relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)" and concluding that allegation of inequitable conduct was improperly pled where counterclaim and answer failed to disclose relevant prior art).

Further, after reviewing the trial transcript, the Court is not convinced that Plaintiff expressly or impliedly consented to the trial of this issue. Although evidence concerning the DT60 was introduced at trial, it appears to the Court that this evidence was related to Defendants' claim of invalidity, rather than inequitable conduct. Indeed, in their opening statement Defendants raise only the Garcia technology and not the DT60 in the context of their inequitable conduct claim. (Tr. at 226:22–227:11). Despite the Court's impression that this matter was improperly pled by Defendants, the Court will consider the merits of Defendants' argument in an attempt to provide the parties and the appellate court with a comprehensive opinion.

4. Moreover, the evidence also suggests that the Patent Examiner was aware of the DT60 device during the prosecution of the '487 Patent. (Tr. 2448:6–2449:20; DX 265 at 00631–34). Accordingly, the Court cannot conclude that Defendants have established by clear and convincing evidence that Plaintiff failed to disclose a material reference.